77 A.3d 547

**BENEFICIAL CONSUMER DISCOUNT COMPANY d/b/a Beneficial Mortgage Company of Pennsylvania, Appellant**

v.

**Pamela A. VUKMAN, Appellee.**

Supreme Court of Pennsylvania.

Argued April 9, 2013.

Decided Sept. 25, 2013.

Paul Arthur Adams, Esq., Keith Allen Clark, Esq., Shumaker Williams, P.C., Camp Hill, for Pennsylvania Association of Community Bankers, Amicus Curiae.

David Evenhuis, Esq., Harrisburg, for Pennsylvania Association of Realtors, Amicus Curiae.

Michael Steven O'Neil, Esq., for Pennsylvania Housing Finance Agency, Amicus Curiae.

Raymond Paul Pepe, Esq., K & L Gates, L.L.P., Harrisburg, Pennsylvania Bankers Association, Amicus Curiae.

David James Bird, Esq., Pittsburgh, Mark S. Melodia, Esq., Henry Falkner Reichner, Esq., Philadelphia, Reed Smith, LLP, Andrew K. Stutzman, Esq., Stradley, Ronon, Stevens & Young, L.L.P., Philadelphia, for Beneficial Consumer Discount Company.

Lauren P. McKenna, Esq., Fox Rothschild, L.L.P., Philadelphia, for Pennsylvania Land Title Association, Appellant Amicus Curiae.

Michael P. Malakoff, Esq., Malakoff and Brady, P.C., Pittsburgh, Jeffrey L. Suher, Esq., Jeffrey Suher, P.C., for Pamela Vukman.

Ellen Mary M. Doyle, Esq., Stember Feinstein Doyle Payne & Kravec, Pittsburgh, Julie Nepveu, Esq., for AARP & National Association of Consumer Advocates, Appellee Amicus Curiae.

Devon E. Sanders, Esq., Community Legal Services, for Community Legal Services, Inc., Appellee Amicus Curiae.

Eileen D. Yacknin, Esq., Neighborhood Legal Services Association, for Neighborhood Legal Services Association, Appellee Amicus Curiae.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## *OPINION*

Justice EAKIN.

This is an appeal from the order of the Superior Court affirming the order of the Court of Common Pleas of Allegheny County, which granted appellee's motion to set aside judgment and sheriff's sale, and dismissed appellant Beneficial Consumer Discount Company's praecipe without prejudice. Upon review, we reverse and remand.

In October, 2006, mortgagee Beneficial filed a complaint in mortgage foreclosure against mortgagor appellee, alleging appellee was in default. Prior to the filing, Beneficial provided appellee an "Act 91" notice, discussed below. The

parties eventually agreed to a settlement whereby Beneficial received judgment for the accelerated amount due on the mortgage; in turn, Beneficial agreed not to execute on the judgment so long as appellee made regular payments. The trial court approved this settlement in May, 2009.

On April 5, 2010, Beneficial filed an affidavit alleging appellee had defaulted on her obligations under the settlement agreement. The following day, Beneficial filed a praecipe for writ of execution. On August 2, 2010, the property was sold at sheriff's sale; Beneficial was the successful bidder.

On August 31, 2010, appellee filed a document titled "Motion to Set Aside Judgment and Sheriff's Sale," in which she contended Beneficial failed to comply with the requirements of the Homeowner's Emergency Mortgage Act (Act 91), 35 P.S. §§ 1680.401c *et seq.* Specifically, appellee alleged the Act 91 notice in 2006 failed to inform her of the option of a face-to-face meeting with Beneficial. Following a hearing, the trial court found the Act 91 notice was deficient based on this omission. *See* Combined Act 91/Act 6 Notice, 5/17/06. The court concluded this stripped it of subject matter jurisdiction, which cannot be waived; therefore, the court set aside the sheriff's sale and judgment, and dismissed Beneficial's original complaint. Trial Court Order, 12/7/11, at 3 (quoting *HSBC Bank v. Carter*, GD–08–006055, 6/2/10 (Allegheny County), *affirmed*, No. 1073 WDA 2010, unpublished memorandum (Pa.Super. filed January 30, 2012)) ("proper notice was an essential prerequisite, a jurisdictional prerequisite to filing a mortgage foreclosure action").

Beneficial filed a timely appeal asserting that the notice sent to appellee was not deficient, that appellee was barred from challenging the notice's adequacy at this stage, and that even if the notice was deficient, this fact did not extinguish the trial court's subject matter jurisdiction over this case. *Beneficial Consumer Discount Company v. Vukman*, 37 A.3d 596, 598–99 (Pa.Super.2012).[1]

1. The case reporter misspells appellee's name as "Vukmam."

The Superior Court held the Act 91 notice was deficient as contended. *Id.*, at 602. Concerning subject matter jurisdiction, the Superior Court noted, although "[a]ppellee's complaints regarding the deficiencies in the Act 91 notice sound more in the nature of a jurisdictional challenge based upon procedural matters[,]" which "can be waived," it was bound by its previous decision in *Philadelphia Housing Authority v. Barbour*, 405 Pa.Super. 140, 592 A.2d 47, 48 (1991), *affirmed per curiam*, 532 Pa. 212, 615 A.2d 339 (1992). *Beneficial Consumer Discount Company*, at 599–600 (citation omitted). There, the court agreed with the trial court's holding that foreclosure notice requirements are jurisdictional. *Id.; see Philadelphia Housing*, at 48 (citing *Main Line Federal Savings and Loan Association v. Joyce*, 632 F.Supp. 9, 10 (E.D.Pa.1986)) ("[T]he notice requirements pertaining to foreclosure proceedings are jurisdictional, and, where applicable, a failure to comply therewith will deprive a court of jurisdiction to act.");[2] *Commonwealth v. Hull*, 705 A.2d 911, 912 (Pa.Super.1998) (citation omitted) ("It is beyond the power of a panel of the Superior Court to overrule a prior decision of the Superior Court.").[3] "For [that] reason, [the court] conclude[d] that the trial court properly considered whether the pertinent Act 91 notice was deficient." *Beneficial Consumer Discount Company*, at 600.

2. The Superior Court also cited *Marra v. Stocker*, 532 Pa. 187, 615 A.2d 326 (1992); however, that case did not address the effect of defective notice on subject matter jurisdiction. There we held certain notice requirements did not apply to the foreclosure in question. *Marra*, at 329. The only mention of jurisdiction was in then-Justice Zappala's dissent, in which he noted *Main Line Federal*, "held that the notice required by Act 6 is a jurisdictional prerequisite to suit such that failure to give notice deprives the court of subject matter jurisdiction[; however, that case] ... has never been adopted by an appellate court of this jurisdiction." *Id.*, at 331 n. 4 (Zappala, J., dissenting) (citing *Main Line Federal*, at 10).

3. This Court is not bound by the quoted language from *Philadelphia Housing, see Heim v. Medical Care Availability and Reduction of Error Fund*, 611 Pa. 1, 23 A.3d 506, 510 (2011) (citation omitted) ("a *per curiam* order does not serve as binding precedent"), nor have we adopted or are we bound by *Main Line Federal. See In re Stevenson*, 615 Pa. 50, 40 A.3d 1212, 1216 (2012) ("[C]ourts of our Commonwealth are not bound by decisions of federal courts inferior to the U.S. Supreme Court.").

Beneficial petitioned for allocatur; this Court granted review of the following issue: [4]

Does a lender's use of the Uniform Act 91 Notice divest a trial court of subject matter jurisdiction and require setting aside a completed Sheriff's Sale, vacating a consent judgment, and dismissing a foreclosure action where any claimed defect in the notice implicates only jurisdiction based on a procedural matter, the lender had no discretion in the form of notice it used, the notice was prescribed by the PHFA consistent with express statutory authorization, and the record shows that the borrower-in-default suffered no prejudice from the lender's use of the Uniform Act 91 Notice, received all the protections contemplated by Act 91, and waived any claim of a procedural defect concerning Act 91?

*Beneficial Consumer Discount Company v. Vukman,* 618 Pa. 141, 55 A.3d 100, 100–01 (2012) (*per curiam*). We also requested additional briefing regarding "Whether the recently-enacted Homeowner Assistance Settlement Act, 35 P.S. § 1681.1 *et seq.,* affects our disposition. *See Greenough v. Greenough,* 11 Pa. 489 [1849 WL 5732] (1849). *See also Commonwealth v. Shaffer,* [557 Pa. 453] 734 A.2d 840, 843–844 ( [Pa.] 1999)." *Id.,* at 101.

First, Beneficial contends improper notice simply goes to the court's power to act, not its subject matter jurisdiction. Because we determine defective Act 91 notice does not implicate the jurisdiction of the court, the other issues raised need not be addressed, and we remand to the trial court without considering them.

The test for whether a court has subject matter jurisdiction inquires into the competency of the court to determine controversies of the general class to which the case present-

---

4. Beneficial sets forth its "question" in a single run-on sentence of 115 words, comingling multiple distinct issues. This unnecessary effusiveness erodes comprehension as it goes on. By phrasing clauses in the conjunctive, appellant repeats a too-common error, making the answer sought dependent on establishing every clause set forth. Advocates do not advance their cause by tossing every arguably favorable fact into a single all-encompassing mélange of a sentence. Nevertheless, we will address whether defective notice affects jurisdiction, which despite the verbosity is the relevant question.

ed for consideration belongs. Thus, as a pure question of law, the standard of review in determining whether a court has subject matter jurisdiction is *de novo* and the scope of review is plenary.

*Mazur v. Trinity Area School District,* 599 Pa. 232, 961 A.2d 96, 101 (2008) (citation omitted).

In 2006, Act 91 required a mortgagee who desired to foreclose to send notice to the mortgagor "advis[ing] the mortgagor of his delinquency . . . and that such mortgagor has thirty (30) days to have a *face-to-face meeting with the mortgagee* who sent the notice or a consumer credit counseling agency to attempt to resolve the delinquency . . . by restructuring the loan payment schedule or otherwise." 35 P.S. § 1680.403c(a)-(b)(1) (emphasis added), *amended by* P.L. 841, No. 60, § 2 (July 8, 2008). As the notice sent lacked this clause, the notice was deficient under the statute.

Appellant's contention is that Act 91 notice is "a procedural requirement or condition precedent that does not impact the general subject matter jurisdiction of the Courts of Common Pleas to hear foreclosure actions." Appellant's Brief, at 20 (citing *Bell Tel. Co. v. Philadelphia Warwick Co.,* 355 Pa. 637, 50 A.2d 684, 688 (1947) (court not without subject matter jurisdiction merely because condition precedent to recovery has not been satisfied); *Skelton v. Lower Merion Tp.,* 298 Pa. 471, 148 A. 846, 847 (1930) ("Whether or not there are statutory or contractual conditions, compliance with which is essential to [the plaintiff's] recovery, and whether or not he is obliged to aver that he has complied with them, if there are any, are matters of substance, not of jurisdiction[.]")). The Superior Court, appellant contends, confused the distinction between jurisdiction and power, improperly concluding it was bound by the comment in *Philadelphia Housing,* which was *dicta* based on *dicta* in a non-binding federal case. Appellant further avers the Superior Court misapprehended this Court's holding in *Marra, see supra* n. 2, and that no case from the Superior Court or this Court has held a court is deprived of subject matter jurisdiction in a foreclosure action where the Act 91 notice was defective.

Appellee does not question the competency of the courts to entertain foreclosure actions. Instead, she argues, "Act 91 mandates that no foreclosure cause of action exists prior to proper Notice[,]" which is "a prerequisite for the foreclosure action to even be cognizable at law[;]" therefore, "jurisdiction has been specifically removed by a statute or rule of law over pre or defective notice actions[,]" and "subject matter jurisdiction over such actions is lacking." Appellee's Brief, at 13, 19 (citations and internal quotation marks omitted). In support, appellee contrasts, without legal citation, "jurisdictional prerequisite[s]," which "establish[ ] the conditions under which access to the court is granted or denied," and "elements of a cause of action that must be demonstrated for the court to actually grant relief." *Id.*, at 11. Appellee argues that by requiring notice prior to the commencement of a foreclosure action, "the Legislature has ousted subject matter jurisdiction from the courts over foreclosure actions commenced prior to statutorily-defined proper [n]otice." *Id.*, at 12. Appellee then quotes Act 91 and asserts "not only is the Notice prescribed by Act 91 jurisdictional, jurisdiction is withheld from the court until the Act 91 process is exhausted." *Id.*, at 16.

Appellee claims the Legislature framed Act 91 "explicitly in terms of . . . the right for the cause of action to be commenced" by stating, " 'Before any mortgagee may[ ] . . . commence any legal action including mortgage foreclosure to recover under such obligation'[, it must comply with Act 91]." *Id.* (quoting 35 P.S. § 1680.402c(a)). Thereby, appellee contends, the Legislature "altogether eliminated any remedy a pre-Notice foreclosure plaintiff had at the outset under prior statutes or the common law[,]" and as such, "its dictates must be strictly complied with." *Id.*, at 16–17 (citing *Shenango Valley Osteopathic Hospital v. Department of Health*, 499 Pa. 39, 451 A.2d 434, 437 (1982) (citation omitted) ("In all cases where a remedy is provided . . . by any act or acts of assembly of this [C]ommonwealth, the directions of the said acts shall be strictly pursued[.]")).

Lastly, appellee argues that where the Legislature chooses "to forbid a cause of action as opposed to simply changing the

rules under which the [court] has the power to grant relief in particular cases[,]" it "depriv[es] the court of the power to even hear the action" absent fulfillment of the new condition. *Id.*, at 21. Appellee contends choosing this more drastic result in the area of mortgage foreclosure is reasonable, given that "[f]oreclosure defendants are almost by definition lacking in financial resources, and this clearly translates into a deficit in legal resources[,]" and "[m]ost foreclosure cases are not even litigated but go to default judgment, and when they are litigated it is often on a pro-se basis." *Id.*, at 22.

■ The question thus is whether Act 91 imposes jurisdictional prerequisites, which "relate[ ] solely to the competency of the particular court ... to determine controversies of the general class to which the case ... belongs[,]" or whether they are procedural requirements, which impact "the ability of a [court] to order or effect a certain result[,]" in mortgage foreclosure cases. *In re Melograne*, 571 Pa. 490, 812 A.2d 1164, 1167 (2002) (citation omitted). "Claims relating to a tribunal's power are, unlike claims of subject matter jurisdiction, waivable." *Id.* (citation omitted); *see Jones v. State Automobile Insurance Association*, 309 Pa.Super. 477, 455 A.2d 710, 712 (1983) (quoting *Papencordt v. Masterwork Paint Co.*, 412 Pa. 508, 194 A.2d 878, 880–81 (1963)) (in determining improper commencement of action by petition and rule was waivable procedural defect, court noted, "Where a court has general jurisdiction over the subject matter of the litigation, any irregularity in the method by which the court obtains jurisdiction of a particular case is usually waived by failure to raise the objection timely. Defects in process or procedure may always be waived provided there is general jurisdiction of the subject matter.").

Although this Court has never addressed whether Act 91 notice implicates subject matter jurisdiction, the New Jersey Supreme Court recently rejected a mortgagor's argument that a defect in a pre-foreclosure notice violates a "jurisdictional precondition" and renders any resulting judgment void. *See U.S. Bank National Association v. Guillaume*, 209 N.J. 449, 38 A.3d 570, 587 & n. 4 (2012). The Court reasoned, "Had the

Legislature intended that a foreclosure action be dismissed whenever a timely-served notice omitted even a single item listed in N.J.S.A. 2A:50–56(c), it would have so stated." *Id.,* at 587. While the New Jersey Court's decision is not binding, it is persuasive because the pre-foreclosure notice statute at issue in *Guillaume* is substantially similar to Act 91.[5] In fact, N.J.S.A. 2A:50–56 is more suggestive of a legislative intent to eradicate a defective notice foreclosure action than Act 91 in that it requires mortgagors to plead compliance with its requirements in their complaints. *See* N.J.S.A. 2A:50–56(f) ("Compliance with this section shall be set forth in the pleadings of any legal action referred to in this section.").

■ Save for exceptions irrelevant to this matter, our Courts of Common Pleas have unlimited original jurisdiction over all proceedings in this Commonwealth, unless otherwise provided by law. Pa. Const. art. 5, § 5; 42 Pa.C.S. § 931(a). In the absence of a clear legislative mandate, laws are not to be construed to decrease the jurisdiction of the courts. *See, e.g., Armstrong School District v. Armstrong Education Association,* 528 Pa. 170, 595 A.2d 1139, 1144 (1991) ("The language of [the statute] makes no reference to a decrease in the equity court's jurisdiction and such a diminution may not be implied."); *In re Jones & Laughlin Steel Corporation,* 263 Pa.Super. 378, 398 A.2d 186, 191 (1979) ("[I]f the legislature's intention to limit jurisdiction is not clear, we should construe the act in question as imposing no limitation."), *affirmed,* 488 Pa. 524, 412 A.2d 1099 (1980).

Appellee's entire argument relies on her incorrect assumption that the Legislature has required the cause of action in foreclosure to include a mortgagee's compliance with Act 91's

5. The New Jersey statute provides:
Upon failure to perform any obligation of a residential mortgage by the residential mortgage debtor and before any residential mortgage lender may accelerate the maturity of any residential mortgage obligation and commence any foreclosure or other legal action to take possession of the residential property which is the subject of the mortgage, the residential mortgage lender shall give the residential mortgage debtor notice of such intention at least 30 days in advance of such action as provided in this section.
N.J.S.A. 2A:50–56(a).

requirements. A cause of action is "a factual situation that entitles one person to obtain a remedy in court from another person." Black's Law Dictionary 235 (8th ed. 2004). In foreclosure, this factual situation includes a mortgagor's default on a duly executed mortgage. *See* Pa.R.C.P. 1147(a) (itemizing factual averments required in mortgage foreclosure complaint). The cause of action does not include the procedural requirements of acting on that cause. Appellee's overarching assertion that Act 91 imposes jurisdictional prerequisites on mortgage foreclosure actions is unsupportable.

Turning to the definitions of "procedural law" and "procedure," the Act 91 notice requirements appear to fit comfortably in the procedural realm as they set forth the steps a mortgagee with a cause of action must take prior to filing for foreclosure. *See* Black's Law Dictionary 1241 (8th ed. 2004) (Procedural law: "The rules that prescribe the steps for having a right or duty judicially enforced, as opposed to the law that defines the specific rights or duties themselves." Procedure: "1. A specific method or course of action. 2. The judicial rule or manner for carrying on a civil lawsuit or criminal prosecution."). Contrary to appellee's argument, the Act 91 notice requirements certainly do not sound in jurisdiction as they do not affect the classification of the case as a mortgage foreclosure action. *See In re Melograne*, at 1167 (citation omitted) ("Jurisdiction relates solely to the competency of the particular court or administrative body to determine controversies of the general class to which the case then presented for its consideration belongs."). Moreover, the lack of explicit language in Act 91 prescribing that such requirements are jurisdictional cautions against this Court treating them as such. *See Armstrong School District*, at 1144; *In re Jones & Laughlin Steel Corporation*, at 191.

The failure to pay the mortgage according to its terms gave Beneficial its cause of action. To act on that cause of action, it was required to give notice under Act 91. As the notice it gave did not meet the requirements of the Act, it was defective and the procedural requirements for enforcement were

not met; that defect, however, did not affect the jurisdiction of the court to hear the matter.

Accordingly, we find the provision of a defective Act 91 notice does not deprive the courts of subject matter jurisdiction, and we remand this case to the trial court.[6]

Order reversed; case remanded. Jurisdiction relinquished.

Former Justice ORIE MELVIN did not participate in the consideration or decision of this case.

Chief Justice CASTILLE and Justices BAER and McCAFFERY join the opinion.

Justice SAYLOR files a concurring opinion in which Justice TODD joins.

Justice SAYLOR, concurring.

I find it unnecessary to reach the issue of whether inadequate notice deprives the courts of subject matter jurisdiction, as, in my view, the notice that Beneficial provided to Appellee was not deficient in the first instance. Accordingly, I concur in the result reached by the Majority.

By way of background, the General Assembly amended the Housing Finance Agency Law via Act 91 of 1983, creating the Homeowner's Emergency Mortgage Assistance Program ("HEMAP") and establishing the Pennsylvania Housing Finance Agency ("PHFA") as the entity responsible for carrying out HEMAP.[1] *See* Act of December 23, 1983 (P.L. 385, No.

---

**6.** While we considered the Legislature's recent enactment of the Homeowner Assistance Settlement Act (Act 70), 35 P.S. § 1681.1 *et seq.*, given that our decision is reached without reference to this statute, further analysis of the same is unnecessary.

**1.** Section 401–C of Act 91 provides, in relevant part:

(b) The [PHFA] shall carry out the program established by this article. Within sixty days of the effective date of this article, the [PHFA] shall adopt initial program guidelines for the implementation of this article and may revise the guidelines whenever appropriate. The [PHFA] shall report annually to the General Assembly on the effectiveness of the Homeowner's Emergency Mortgage Assistance Program in accomplishing the purposes of this article.

91), *as amended,* 35 P.S. §§ 1680.401c–1680.412c ("Act 91"). The purpose of Act 91 was to institute a program to avert extensive mortgage foreclosures and distress homes sales resulting from default caused by conditions beyond the control of homeowners, through emergency mortgage assistance payments. *See* 35 P.S. § 1680.401c, Historical and Statutory Notes.

Section 402–C of Act 91 establishes certain notice requirements that a mortgagee/lender must abide by prior to instituting foreclosure proceedings; specifically, that section directs that, before a mortgagee may commence mortgage foreclosure, "such mortgagee shall give the mortgagor notice as described in section 403–C" and "[s]uch notice shall be given in a form and manner prescribed by the [PHFA]." *Id.* § 1680.402c(a). In turn, Section 403–C delineates the requirements for the PHFA-prescribed notice, and provides that any mortgagee desiring to foreclose on a mortgage shall send the mortgagor/homeowner the notice set forth in subsection (b). *See id.* § 1680.403c(a)-(b). In 2006, the time relevant to this matter, subsection (b), which is pertinent to the instant controversy, stated:

> The [PHFA] shall prepare a notice which shall include all the information required by this subsection. . . . This notice shall be in plain language and specifically state that the recipient of the notice may qualify for financial assistance under the Homeowner's Emergency Mortgage Assistance Program. This notice shall contain the telephone number and the address of a local consumer credit counseling agency. This notice shall be in lieu of any other notice required by law. *This notice shall also advise the mortgagor of his delinquency or other default under the mortgage and that such mortgagor has thirty (30) days to have a face-to-face meeting with the mortgagee who sent the notice or a consumer credit counseling agency* to attempt to

(c) The [PHFA] shall develop uniform notices and rules and regulations in order to implement the provisions of this article.
35 P.S. § 1680.401c(b), (c).

resolve the delinquency or default by restructuring the loan payment schedule or otherwise.

35 P.S. § 1680.403c(b)(1), *amended by* P.L. 841, No. 60, § 2 (July 8, 2006) (footnote omitted) (emphasis added).

Prior to commencing foreclosure proceedings, Beneficial sent Appellee the PHFA-prescribed notice that the PHFA had developed pursuant to Act 91's directives. This notice directed that Appellee had 30 days to meet with a consumer credit counseling agency to determine if HEMAP could assist her, *see* Combined Act 91/ Act 6 Notice, May 17, 2006, at 1–2, *reproduced record* at 139a–40a; the notice did not present Appellee with the option of meeting with the mortgagee, Beneficial.

The trial court found the notice to be deficient, since it failed to notify Appellee of the option of having a meeting with the mortgagee, reasoning that "[t]he statute requires that the lender must notify the mortgagor that the mortgagor has thirty (30) days to have a face-to-face meeting with the mortgagee who sent the notice or a consumer credit counseling agency." *Beneficial Consumer Discount Co. v. Vukman,* No. GD–06–024554, *slip op.* at 2, 2011 WL 10944862 (C.P.Allegheny, Feb. 15, 2011).

The Superior Court likewise concluded that the notice that Beneficial provided to Appellee was deficient, reasoning that Subsection 403–C(b)(1) unambiguously and clearly mandated that a mortgagee provide notice to the mortgagor that gave the mortgagor the choice of meeting with the mortgagee or a consumer credit counseling agency. *See Beneficial Consumer Disc. Co. v. Vukman,* 37 A.3d 596, 602 (Pa.Super.2012). The intermediate court proceeded to explain that, although Act 91 empowered the PHFA to formulate a uniform notice, the General Assembly "mandated that the notice include *all* of the information outlined by Act 91's notice provision." *Id.* (citing 35 P.S. § 1680.403c(b)(1), *amended by* P.L. 841, No. 60, § 2 (July 8, 2006) ("The [PHFA] shall prepare a notice which shall include all the information required by this subsection....")).

Presently, Beneficial and the PHFA, as *amicus curiae,* argue that, in 2006, the language of Subsection 403–C(b)(1) contained an ambiguity. The PHFA explains that both it and Beneficial interpreted the statute as requiring the notice to inform the mortgagor of the opportunity for at least one of the two alternative types of meetings available under the statute. *See* Brief of *Amicus Curiae* PHFA at 10. In this regard, PHFA develops that the use of the word "or" gives rise to an ambiguity with two reasonable resolutions; namely, the General Assembly intended that: (1) the notice inform the mortgagor of the availability of either a meeting with the mortgagee or a meeting with a consumer credit counseling agency, and the mortgagor chooses between the two alternatives; or (2) the PHFA exercise its discretion in promulgating the notice and select among the alternative types of meetings. *See id.* at 14 (citing *In re Paulmier,* 594 Pa. 433, 448, 937 A.2d 364, 373 (2007) (engaging in a statutory construction analysis, and stating "[t]he word 'or' is defined as a conjunction 'used to connect words, phrases, or clauses representing alternatives.' ... In other words, 'or' is disjunctive. It means one or the other of two or more alternatives." (citation omitted))). The PHFA asserts that, although the trial court and Superior Court read Subsection 403–C(b)(1) as only supporting the latter construction, its interpretation of this Subsection is also reasonable, since the statute does not designate who is to choose between the alternatives generated by the use of the disjunctive conjunction "or." *See id.*

Beneficial and the PHFA further maintain that, since the language of Subsection 403–C(b)(1) is ambiguous, and because the PHFA's interpretation of that Subsection is not clearly erroneous, its construction of the statute is entitled to deference. *See* Brief of Appellant at 16–17 (citing *Anela v. Pennsylvania Hous. Fin. Agency,* 547 Pa. 425, 428, 690 A.2d 1157, 1159 (1997) ("[A]n agency's interpretation of its enabling statute is entitled to great weight and will not be overturned unless it is clearly erroneous.")); Brief of *Amicus Curiae* PHFA at 16 (citing *Schuylkill Twp. v. Pennsylvania Builders Ass'n,* 607 Pa. 377, 385, 7 A.3d 249, 253 (2010) ("An interpreta-

tion by the agency charged with a statute's implementation is accorded great weight and will be overturned only if such a construction is clearly erroneous." (citation omitted))). Beneficial and the PHFA contend that the lower courts deviated from this Court's precedent, requiring deference to an agency's construction of an ambiguous statute that it is charged with executing unless such construction is clearly erroneous, and failed to properly consider the PHFA's well-reasoned construction of the statute. Brief for Appellant at 17–18; Brief of *Amicus Curiae* PHFA at 16–17. To this end, the PHFA explains its rationale for promulgating the notice at issue with solely the option for a meeting with a consumer credit counseling agency as follows:

> While counseling agencies have been the sole application portal for HEMAP since the first revision of the Act 91 Notice in 1985, the [PHFA] used the opportunity presented by the General Assembly's 1998 [amendments to Act 91] to redraft the notice by channeling homeowners into the counseling agency network earlier in the process as a means of better serving their needs.

> The [PHFA] made this change in 1999 for several reasons. Face-to-face meetings with lenders or their representatives created challenges for meeting the goals of the program.... The Act imposes some procedural notice requirements upon mortgagees, but it has never required lenders to meet with borrowers. Lenders have never really been a part of the HEMAP application process and, therefore, could not help a homeowner apply for assistance. They could not be relied upon to document the occurrence of a face-to-face meeting with a homeowner consistently, or to notify other mortgagees of the meeting's occurrence. Because the Act did not compel lenders to meet with homeowners, and the offices of most larger lenders are outside of Pennsylvania, many lenders were unwilling or unable to schedule a face-to-face meeting with a homeowner. In large part, the opportunity for a face-to-face meeting with the lender was illusory from the beginning of the program, and

homeowners' efforts to meet with lenders wasted precious time.[2]

In contrast, homeowners taking advantage of PHFA desig-nated counseling agencies were having much better results. The [PHFA's] network of nonprofit and community-based credit counseling agencies is available in each of Pennsylva-nia's 67 counties, and counseling agencies are trained and funded by PHFA to help homeowners with foreclosure mitigation efforts, to offer independent advice and assis-tance to homeowners, and finally to ensure the complete and timely submission of HEMAP applications. To better serve homeowners, to increase administrative efficiency, and to better control the timing of the HEMAP application pro-cess, the [PHFA] consciously and intentionally revised the Act 91 Notice to remove all references to the availability of face-to-face meetings with lenders or their representatives.

Brief of *Amicus Curiae* PHFA at 8–9.

Initially, and contrary to the holding of the Superior Court, I do not read Subsection 403–C(b)(1) as clearly and unambigu-ously requiring that a mortgagee provide notice to the mortga-gor that gives the mortgagor the choice of meeting with the mortgagee or a consumer credit counseling agency. Rather, while that Subsection can be reasonably interpreted in this manner, I find the PHFA's interpretation to be likewise reasonable. The PHFA construed Subsection 403–C(b)(1) as vesting the PHFA with the discretion of choosing among the alternative forms of a meeting to include in the notice that Act 91 directs it to promulgate; in my view, this is a rational construction of that Subsection given: the use of the disjunc-tive term "or" in the statutory language, *see* 35 P.S. § 1680.403c(b)(1); the fact that Act 91 does not specify who is vested with the power to choose among the alternatives for the face-to-face meeting; and the statutory directive bestow-ing the PHFA with the authority to develop the notice that

2. The notice that the mortgagee is required to send the mortgagor under Subsection 403–C(b)(1) only acts as a stay on the mortgagee's commencement of a mortgage foreclosure action for a period of 30 days. *See* 35 P.S. § 1680.403c(b)(2)(ii).

mortgagees must provide to mortgagors prior to instituting foreclosure actions under Act 91, *see id.* §§ 1680.401 c(b)-(c); 1680.402c(a); 1680.403c(a)-(b). Accordingly, I discern an ambiguity in the language of Subsection 403–C(b)(1), as it can be reasonably interpreted in more than one manner. *See Delaware Cnty. v. First Union Corp.*, 605 Pa. 547, 557, 992 A.2d 112, 118 (2010) (stating "that an ambiguity exists when there are at least two reasonable interpretations of the text under review" (citation omitted)).

Furthermore, as set forth above, the PHFA has also espoused an ample and reasonable basis for creating a notice that only provides mortgagors with the option of arranging a face-to-face meeting with a consumer credit counseling agency. *See* Brief of *Amicus Curiae* PHFA at 8–9. As precedent by this Court directs, I would defer to the PHFA's construction of Subsection 403–C(b)(1) in its prescribed notice, since that Subsection's language contains an ambiguity and the agency's interpretation is not clearly erroneous. *See Anela,* 547 Pa. at 428, 690 A.2d at 1159; *Schuylkill Twp.*, 607 Pa. at 385, 7 A.3d at 253. *See also* 1 Pa.C.S. § 1921(c)(8) (providing that when the words of a statute are ambiguous, the General Assembly's intention may be determined by considering administrative interpretations of the statute).

I, therefore, concur in the result reached by the Majority, since I find the PHFA-prescribed notice that Beneficial sent Appellee in 2006 complied with the mandates of Act 91 that were in effect at that time.

Justice TODD joins this concurring opinion.