**Apex Community Federal Credit Union v. Arasin**

C.P. of Chester County, No. 2013-11073

*Robert L. Stauffer*, for plaintiff.
*Brian J. Smith* and *Joseph A. Diorio*, for defendants.

TUNNELL, *J.*, Feb. 23, 2015—On July 22, 2008, defendants Sandra Arasin and Randy Stetler borrowed $77,000.00 from Apex Community Federal Credit Union ("Apex"). In order to secure the Loan, Arasin executed a mortgage in favor of Apex on two properties located at 874-876 Cedarville Road, Pottstown, PA. After defendants admittedly defaulted under the terms of the Loan, Apex filed a complaint in mortgage foreclosure. Defendants answered the complaint and asserted the following defenses: (1) Apex cannot prevail on its claim because it provided defendant Arasin with a defective Act 6/91 notice and (2) the defense of recoupment, *i.e.* any damages Apex is entitled to recover must be reduced by the amount owed by Apex to defendants as a penalty for its violation of the Truth in Lending Act ("TILA") and the amendment thereto, the Homeownership Equity Protection Act ("HOEPA").

The matter came to trial on January 23, 2015.

For the reasons discussed herein, the court finds in favor of Apex.

## FINDINGS OF FACT

1. Plaintiff, Apex Community Federal Credit Union ("Apex"), is a registered federal credit union doing business at 540 Old Reading Pike, Stowe, PA 19464.

2. Defendants, Sandra Arasin and Randy Stetler, reside at 874 Cedarville Road, Pottstown, PA 19454.

3. Arasin owns the real property located at 874 Cedarville Road, Pottstown, PA 19454. (Pl.'s. Ex. A.)

4. Arasin also owns the land located at 876 Cedarville Road, Pottstown, PA. (*Id.*)

5. On July 22, 2008, defendants borrowed $77,000.00 from Apex (the "Loan").

6. In order to secure the Loan, Arasin executed a mortgage in favor of Apex on the property located at 874-876 Cedarville Road, Pottstown, PA (the "Mortgage"). (*Id.*)

7. The mortgage was filed and recorded in the Office of the Recorder of Deeds, Chester County, Book Number 7510 at page 91. (*Id.*)

8. At the time of the Loan's inception, Apex provided Arasin and Stetler with closing documents. The loan documents included the Mortgage, a promissory note, a Form HUD-1, a note and fixed rate disclosure statement and a notice of the right to cancel.

9. Apex did not tender or deliver to defendants any other disclosures regarding the Loan.

10. Defendants concede they defaulted on the mortgage payments. (Def.'s FOF No. 5.)

11. Prior to instituting its foreclosure action, on March 1, 2012, Apex sent Arasin a combined Act 6 and Act 91 Notice ("Act 6/91 Notice"). (Pl.'s. Ex. D.)

12. The Act 6/91 Notice on page 2 incorrectly identified

the address of the property subject to the mortgage and foreclosure, but correctly identified such property on page 4 under the section "How to Cure Your Mortgage Default." (*Id.*)

13. Following their default and in order to avoid foreclosure, defendants filed several bankruptcies. The bankruptcy cases were unsuccessful.

14. A trial on this matter was held on January 23, 2015. All of the parties appeared and were represented by counsel.

## DISCUSSION

Defendants concede that that they defaulted on their mortgage payments. (Def.'s FOF No. 7 and COL No. 10.) Notwithstanding these admissions, defendants argue that Apex's claim fails as a matter of law because (1) the combined Act 6/91 Notice sent by Apex to defendant Arasin was defective and (2) defendants are entitled to statutory damages, pursuant to the TILA and HOEPA and asserted as a defense of recoupment, which would nullify any recovery.

Although both of these asserted defenses can implicate any number of legal issues and provisions of the TILA/ HOEPA, whether or not these defenses prevent Apex from recovering in this case turns on an initial question: does this foreclosure action involve a mortgage subject to these statutes, *i.e.* is it a "residential mortgage" securing a principal dwelling? If it is, then (a) the notice requirements of ACT 6 and 91 apply and an analysis of whether Apex's Act 6/91 Notice was defective becomes necessary, and (b) the duties, obligations and remedies provided for in

the TILA/HOEPA may be implicated, requiring further analysis of these statutes by this court. The court, therefore, begins with this threshold question.

1. Which mortgages are subject to the notice requirements of ACT 6/91?

Act 6 and Act 91 both delineate the notice requirements for a residential mortgagee seeking to institute a foreclosure action against a mortgagor. *Wells Fargo Bank v. Spivak*, 104 A.3d 720 (Pa. Super. 2014).

Pennsylvania's Loan Interest and Protection Act, also known as "Act 6", is a "comprehensive interest and usury law with numerous functions" that offers protection for homeowners with residential mortgages from "overly zealous residential mortgage lenders." *Beckett v. Laux*, 395 Pa. Super. 563, 577 A.2d 1341, 1343 (1990) (internal quotations omitted); 41 Pa. Stat. Ann. § 101 (West 1999 & Supp. 2012), *et seq.* Act 6 requires that certain notice be given "[b]efore any residential mortgage lender may accelerate the maturity of any residential mortgage obligation, commence any legal action including mortgage foreclosure to recover under such obligation, or take possession of any security of the residential mortgage debtor for such residential mortgage obligation...." 41 Pa. Stat. Ann. § 101. The statute defines a "residential mortgage lender" as any person "who lends money...and obtains a residential mortgage to assure payment of the debt...." (*Id.*) A "residential mortgage" is defined as "an obligation to pay a sum of money in an original bona fide principal amount of the base figure or less, evidenced by a security document and secured by a lien upon real property located within this Commonwealth containing

two or fewer residential units or on which two or fewer residential units are to be constructed and shall include such an obligation on a residential condominium unit." (*Id.*).

The Homeowners Emergency Mortgage Assistance Program, also known as "Act 91", requires a mortgagee who desires to foreclose to send notice to the mortgagor "advis[ing] the mortgagor of his delinquency...and that such mortgagor has thirty (30) days to have a face-to-face meeting with the mortgagee who sent the notice or a consumer credit counseling agency to attempt to resolve the delinquency...." *Beneficial Consumer Disc. Co. v. Vukman*, 621 Pa. 192, 77 A.3d 547, 550 (2013); 35 P.S. § 1680.403c(a)-(b)(1), *amended by* P.L. 841, No. 60, § 2 (July 8, 2008)). "[T]he purpose of an Act 91 notice is to instruct the mortgagor of different means he may use to resolve his arrearages in order to avoid foreclosure on his property and also gives him a timetable in which such means must be accomplished." *Wells Fargo Bank, N.A. ex rel. Certificate Holders of Asset Backed Pass-through Certificates Series 2004-MCWI v. Monroe*, 966 A.2d 1140, 1142 (Pa. Super. 2009).

Act 91 provides in pertinent part:

(a) The Pennsylvania Housing Finance Agency, hereinafter referred to as the "agency," may make loans secured by liens on residential real property located in Pennsylvania... The provisions of this article shall not be applicable if:

(1) The property securing the mortgage is not the principal residence of the mortgagor.

(2) The property securing the mortgage is not a one or two-family owner-occupied residence.

Unlike Act 6, the terms included above and applicable in this case are undefined in the statute. *See* 35 P.S. §1680.103.

2. Which mortgages are subject to the provisions of the TILA/HOEPA and permit the defense of recoupment?

In 1968, Congress enacted the TILA, which governs the terms and conditions of consumer credit and requires lenders to disclose certain loan information such as loan fees and costs. 15 U.S.C. § 1601 *et seq.*; *In re Crisomia*, 2002 WL 31202722, at *3 (Bankr. E.D.Pa. Sept. 13, 2002). Congress enacted HOEPA in 1994 as an amendment to TILA. Pub.L. 103-325 (amending TILA at 15 U.S.C. §§ 1601-02, 1604, 1610, 1639-41, 1648); *see also In re Jackson*, 245 B.R. 23, 25 (Bankr. E.D.Pa. 2000). HOEPA requires lenders to provide borrowers with additional disclosures, in conspicuous type size, with respect to certain home mortgages. 15 U.S.C. § 1639(a)(1). Regulation Z was issued to implement TILA and HOEPA. 12 C.F.R. § 226.1 *et seq.*; *Lopez v. Delta Funding Corp.*, 1998 WL 1537755, at * 7 (E.D.N.Y. Dec. 23, 1998).

The HOEPA requires certain disclosures at the time of the loan origination for "high cost" mortgages that reach certain designated triggers or thresholds. 15 U.S.C. § 1602(aa); 12 C.F.R. § 226.32(a). A "high cost" mortgage covered by HOEPA is a consumer credit transaction with a creditor:

3) that is secured by the consumer's principal dwelling

4) and is a second or subordinate residential mortgage,

not a residential mortgage transaction, a reverse mortgage transaction, or a transaction under an open credit plan

For such loans, a failure to satisfy the requirements of TILA/HOEPA can result in civil liability for the lender, which may be asserted as a matter of defense by recoupment. *See* 15 U.S.C.A. §1640.

The HOEPA, therefore, does not apply to credit transactions unless such transactions are secured by a property used or intended to be used as the mortgagor's principal dwelling. 15 U.S.C. § 1603; *see also Antanuos v. First Nat'l Bank*, 508 F. Supp. 2d 466 (E.D. Va. 2007) (holding "TILA applies only to credit transactions secured by real or personal property used or expected to be used as the principal dwelling of the debtor").

3. Is the subject mortgage a residential mortgage securing a principal dwelling and thus covered by Acts 6 and 91 and TILA/HOEPA?

In order to answer this question, the court must consider the transaction at issue and the properties subject to the mortgage.

On July 22, 2008, defendants borrowed $77,000.00 from Apex. In order to secure the Loan Arasin executed a mortgage in favor of Apex on the properties located at 874-876 Cedarville Road, Pottstown, PA. (Pl.'s Ex. A.)

The mortgage reads as follows:

Borrower does hereby mortgage, grant and convey to Lender the following described property located in CHESTER County, Pennsylvania:

*See Copy of legal description attached hereto as "Exhibit A" and made a part hereof.

Parcel #: 17-3-206 AND 17-3-205

which has the address of 874-876 WEST CEDARVILLE ROAD POTTSTOWN

Pennsylvania 19645

(*Id.*)

Each parcel identified above has its own deed. The grantee named in each deed is Arasin. Both deeds were executed on June 26, 2008. The deed for Parcel 17-3-205 (876 Cedarville Rd.) was recorded in the Office of Recorder of Deeds of Chester County at Mortgage Book 6887, page 2125. The deed for Parcel 17-3-206 (874 Cedarville rd.) was recorded in the Office of Recorder of Deeds of Chester County at Mortgage Book 6887, page 2129. The mortgage was filed and recorded in the Office of the Recorder of Deeds, Chester County, Book 7510, page 91. (*Id.*)

Arasin and Stetler reside at 874 Cedarville Road, Pottstown, PA 19454. (Def.'s FOF, at ¶2.)

During closing argument at trial, defendants argued as defenses Apex's alleged violations of the notice provisions required under Act 6/91 and the TILA/HOEPA. At the close of trial, the court requested that the parties brief the issue of the applicability of the TILA/HOEPA to this transaction and also to submit proposed findings of fact and conclusions of law for the case. The parties did so.

Plaintiff contends in its post-trial brief that the statutory defenses raised by Arasin pursuant to the TILA/HOEPA

do not apply here because this foreclosure action does not involve a loan secured by a consumer's principal dwelling. (Pl.'s COL, at ¶32; Pl.'s Brief, at pp. 1-2). It also argued that its Act 6/91 Notice, as provided, was sufficient. According to Apex, the subject of this mortgage foreclosure action is *only* Parcel No. 17-3-205 (876 Cedarville Rd.), unimproved land consisting of 5.480 acres. (Pl.'s FOF, at ¶6.) Although defendants challenge this argument and contend that it was not pled in the complaint, Apex did identify Arasin as the record owner of the real property and the land in separate paragraphs of its complaint. It averred that each was secured by the mortgage at issue. (Pl.'s Complaint at ¶¶5,6). If Apex now chooses to proceed against only one property, to the exclusion of the other, and in essence not prosecute a part of its claim, it may do so.[1]

Considering all of the facts in this case, the court concludes that this loan transaction is a hybrid — partly secured by a principal dwelling and partly secured by unimproved land. The court was unable to locate any binding precedent which addressed a similar transaction. The court, however, found persuasive the reasoning of the Superior Court of Connecticut, which tackled a similar issue under the TILA, in the case of *Bainer v. Citicorp Mortgage, Inc.*, 44 Conn.Supp. 148, 672 A.2d 541 (1994).

In *Bainer*, the Connecticut court was asked to consider whether a loan transaction that consisted partly of financing to acquire or construct a residence and partly

---

1. To the extent defendants' argument suggests that they have been prejudiced by Apex's decision to move forward only against the land, the court concludes otherwise. First, Apex's position removes defendants' home from this foreclosure action. Second, defendants filed a reply brief challenging Apex's arguments and that brief was considered by the court.

of financing for other purposes would be exempt from the right of rescission provided for under the TILA — an exemption reserved for residential mortgage transactions. The court reasoned as follows:

> Where a loan transaction is a hybrid, consisting partly of financing to acquire or to construct a residence and partly of financing for other purposes, the official staff interpretation of the Federal Reserve Board, Consumer Credit Guide ¶ 3416.03, comment 23(f)-3 (CCH 1994), indicates that the entire loan is exempt from the right to rescind as long as the two purposes are part of one transaction. If they are divided into separate transactions, such as a loan for acquisition and a subsequent loan for improvements, then only the loan for acquisition of the existing residence is exempt, and the right to rescind applies to the advances for improvement. *Id.*

*Bainer*, 44 Conn. Supp. at 154, 672 A.2d at 544.

Similarly in this case, there is a single loan transaction secured partly by a principal dwelling/residence and partly by land. The mortgaged property/land at 876 Cedarville Rd. is not a principal dwelling and defendants do not reside at that property. (Def.'s FOF, at ¶2.) Although argued by defendants, the fact that Apex provided a TILA document to them does not control whether or not this hybrid mortgage is covered by the statutes at issue.[2] That conclusion of law is one left for the court, not the parties.

The court concludes that the mortgage securing 876 Cedarville Rd. is deemed to be other than a "residential

---

2. It should also be noted that although a TILA disclosure may have been required for the 874 Cedarville Rd. property, the same would not apply to the mortgage securing the land.

mortgage" and is not a mortgage securing a principal dwelling as contemplated by the applicable statutory provisions. As such, the Mortgage does not fall within the parameters of Acts 6 and 91 or the liability provisions of TILA/HOEPA. *See also*, ROLAND E. BRANDEL, ET AL., TRUTH IN LENDING, A COMPREHENSIVE GUIDE § 4.03[24] (2d Ed. 1994) ("The definition of dwelling under [TILA] includes all real and personal property that is *used* as a residential structure and that contains one to four units.") (emphasis added).

4. Even if the provisions of Act 6 and 91 applied, Apex's notice was not defective.

If the court had found that this action involved a residential mortgage, the Act 6/91 Notice sent to Arasin by Apex was not defective. Although it mistakenly listed Apex's address on page 2 (Pl.'s Ex. D), the information allegedly omitted (the property address) was included in a later section of the Act 6/91 Notice at page 4. This section specifically discussed the steps defendants could take in order to avoid default. The typographical error identified did not result in a "defective" notice which precludes Apex from recovering on its claim.

5. Even if HOEPA applied, defendants are not entitled to assert the defense of recoupment.

Similarly, if the court had found that TILA/HOEPA applied in this case and the required disclosures were not made, defendants still would not be entitled to damages as a claim for recoupment.

Recoupment is only available under TILA as a "defense" in "an action to collect a debt", 15 U.S.C. §

1640(e). In *New York Guardian Mortgage v. Dietzel*, 524 A.2d 951, 953 (Pa. Super. 1987) the court held:

> An action in mortgage foreclosure is strictly an *in rem* proceeding, and the purpose of a judgment in mortgage foreclosure is solely to effect a judicial sale of the mortgaged property. *Meco Realty Co. v. Burns*, 414 Pa. 495, 200 A.2d 869 (1964). A judgment in a mortgage foreclosure action is not a judgment for money damages and therefore cannot be "an action to collect amounts owed" or "an action to collect the debt" as required under § 1640(h) and (e) of the Truth-In-Lending Act.

*See also, Green Tree Consumer Discount Co. v. Newton*, 909 A.2d 811 (Pa. Super. 2006)(acknowledging that while recoupment may be a defense in some actions, party may not assert such defenses when seeking remedies under TILA and section 1640 in mortgage foreclosure action).

Based on the above, the court makes the following

## CONCLUSIONS OF LAW

1. The court has jurisdiction over this matter pursuant to 41 Pa. C.S.A. §931(a).

2. Venue is properly set in the Court of Common Pleas of Chester County.

3. The court has concurrent jurisdiction with the federal district court to determine this claim. *See* 15 U.S.C. §1640(e).

4. The mortgage was recorded properly at the book and page referenced above.

5. All necessary and required parties have been named,

served and have participated in this case.

6. Defendants defaulted on the note and mortgage at issue.

7. Apex's mortgage was not subject to the requirements of Act 6/91 and its Act 6/91 Notice, nonetheless, was not defective.

8. Defendants' new matter included the defense of recoupment.

9. Apex's mortgage was not subject to the requirements of TILA/HOEPA. Even if Apex's Loan was subject to TILA/HOEPA, the defendant would not be entitled to a reduction of Apex's judgment by virtue of the defense of recoupment.

An appropriate order follows.

### ORDER

And now, this 23rd day of February, 2015, following a bench trial on January 23, 2015 and post-trial briefing by all parties, it is hereby ordered that

1. An *in rem* judgment only is entered in favor of plaintiff Apex Community Federal Credit Union in the amount of $98,360.29, identified as follows,

Principal: $76,083.84

Interest: $19,417.48

Late Charges: $ 858.97 (plus interest at 14.49%)

and other costs and charges collectible under the mortgage for foreclosure and sale of the mortgaged premises.

430

2. Plaintiff may foreclose only against the real estate located at 876 Cedarville Road, Pottstown, PA 19454, Parcel 17-3-205 recorded in the Office of Recorder of Deeds of Chester County at Mortgage Book 6887, page 2125 secured by the mortgage dated July 22, 2008 and recorded in the Office of the Recorder of Deeds, Chester County, Book Number 7510 at page 91.