J-A09029-19

2019 PA Super 139

STEVE FREMPONG AND AGNES FREMPONG

    v.

ALLAN RICHARDSON AND LASHANA WHITAKER

    Appellants

:  IN THE SUPERIOR COURT OF
:        PENNSYLVANIA
:
:
:
:
:
:
:
:
:  No. 1694 EDA 2018
:
:

Appeal from the Judgment Entered April 23, 2018
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  December 2017 No. 3165

STEVE FREMPONG AND AGNES FREMPONG

    Appellants

    v.

ALLAN RICHARDSON AND LASHANA WHITAKER

:  IN THE SUPERIOR COURT OF
:        PENNSYLVANIA
:
:
:
:
:
:
:
:  No. 1955 EDA 2018
:
:

Appeal from the Judgment Entered April 23, 2018
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  December Term, No. 03165

BEFORE:  KUNSELMAN, J., MURRAY, J., and PELLEGRINI*, J.

OPINION BY MURRAY, J.:             **FILED APRIL 30, 2019**

_____

* Retired Senior Judge assigned to the Superior Court.

Agnes Frempong and Steve Frempong[1] (together, Landlords), proceeding *pro se*, and Allan Richardson and Lashana Whitaker (together, Tenants) cross-appeal from the judgment[2] granting possession of the property to Landlords. We affirm the denial of unpaid rent to Landlords, but reverse the award of possession to Landlords. We thus affirm in part and reverse in part.[3]

Agnes Frempong is the sole owner of property located at 2124 N. 11th Street in Philadelphia. "On May 4, 2017, the parties entered into a month-to-month Residential Lease Agreement . . . for the premises . . . . The Tenants were to pay $1,050.00 monthly, plus all utilities and water." Trial Court Opinion, 11/2/18, at 1-2. Meanwhile, the property had a delinquent $916

---

[1] At both the bench trial and the post-trial hearing, Tenants argued that because Agnes Frempong was the sole owner of the property in this landlord/tenant matter, her husband Steve Frempong was not a party. N.T. Trial, 3/19/18, at 4, 6; N.T. Hearing, 5/21/18, at 10. Steve responded, that he was a guarantor of the mortgage and an obligor. N.T., 3/19/18, at 4, 6; N.T., 5/21/18, at 11-12. In the absence of any formal removal of Steve from this case, we proceed according to the caption, which identifies both Agnes and Steve as plaintiffs.

[2] Both Landlords and Tenants purported to appeal from the order entered May 22, 2018 denying their post-trial motions. However, the appeal lies properly from the judgment entered on April 23, 2018, and we have amended the caption accordingly. *See Johnston the Florist, Inc. v. Tedco Constr. Corp.*, 657 A.2d 511, 514 (Pa. Super. 1995) (*en banc*).

[3] Seven organizations — Legal Clinic for the Disabled, Inc., Public Interest Law Center, Legal Help Center, Community Legal Services, Inc., Tenant Union Representative Network, Homeless Advocacy Project, and SeniorLAW Center — have filed a joint *amici curiae* brief (*amici* brief) in support of Tenants' appeal.

water bill, in the names of Agnes and an unknown third party, for the period of July 2016 through September 2017. *Id.* at 2.

On November 8, 2017, Landlords gave Tenants written notice that the lease would be terminated effective December 10, 2017, and a notice of eviction. Trial Court Opinion, 11/2/18, at 3. On November 22nd, Landlords filed a landlord/tenant complaint in the Philadelphia Municipal Court seeking possession of the property and judgment for the rent in arrears. On December 15th, the Municipal Court Judge entered judgment, granting Landlords possession only.

Tenants filed a timely appeal to the Court of Common Pleas (trial court) along with a praecipe for Landlords to file a complaint. "A supersedeas was granted the same day, and Tenants were to pay $1,050.00 . . . on the 4th of every month[ ] into escrow." Trial Court Opinion, 11/2/18, at 3. On January 8, 2018, Landlords filed a *pro se* complaint in the trial court, presenting three claims: "1) ejectment and immediate possession where the lease was terminated effective November 23, 2017 via written notice on November 8, 2017"; breach of the lease for failure to pay rent; and breach of the lease for failure to pay utilities. *Id.* Tenants filed an answer and new matter, and ultimately deposited a total of $2,100 into escrow with the Office of Judicial Records.

On March 13, 2018, Landlords filed an emergency petition for a special injunction, seeking entry to the property for "inspection and/or property

appraisal," related to Landlords' purported refinancing. Landlords' Emergency Petition for Special Injunction, 3/13/18, at 2. On the same day, the trial court denied the petition but allowed the issue to be raised at trial, which was to be held 6 days later.

At this juncture, we note the following relevant Philadelphia Code provisions in Title 9 ("Regulation of Businesses, Trade and Professions"), Chapter 9-3900 ("Property Licenses and Owner Accountability"). Subsection 9-3902(1)(a) ("Rental Licenses") requires the owner of any dwelling "let for occupancy [to] obtain a rental license. No person shall collect rent with respect to any property that is required to be licensed . . . unless a valid rental license has been issued for the property." Phila. Code § 9-3902(1)(a). Section 9-3903(1)(a) ("Certificate of Rental Suitability") also requires a landlord to provide a tenant with a certificate of rental suitability, which is obtained from the Department of Licenses and Inspections (L & I), as well as a copy of the Philadelphia Partners for Good Housing Handbook (Good Housing Handbook). Phila. Code § 9-3903(1)(a).

This case proceeded to a bench trial on March 19, 2018, where Landlords appeared *pro se* and Tenants were represented by counsel. Steve Frempong acknowledged that Landlords did not have a certificate of rental suitability, but, as explanation, averred that the rental license was revoked due to Tenants' failure to pay the water bill. N.T., 3/19/18, at 8, 10-11. Tenants presented a copy of a rental license, which was issued to Landlords on October

2, 2017 (five months after the parties executed the lease) and due to expire on February 28, 2018.[4] *Id.* at 21. Steve claimed that he furnished Tenants a copy of the Good Housing Handbook, but could not provide evidence in support. *Id.* at 10. Finally, we note that although Landlords' complaint sought unpaid rent, they abandoned this claim at trial, averring twice that they were only pursuing possession of the property and payment for the water bill. *Id.* at 12, 18.

Tenants did not call any witnesses, but on cross-examination of Steve, Steve acknowledged that the City of Philadelphia sued Agnes in February 2016 for an unpaid water bill, and sued her again in September of 2017 for seven years' of unpaid real estate taxes totaling more than $6,000.[5] N.T., 3/19/18, at 18-19. Although Tenants asked Steve about a January 2018 hearing at which the City alleged Agnes owed 7 years' of taxes totaling more than $6,000, Steve did not respond. *Id.* at 19-20. Tenants then argued that it was these lawsuits that prohibited Landlords from obtaining a rental license

---

[4] Although the trial court found that the rental license "was revoked prior to expiring February 28, 2018 because of" the City's pending lawsuits against Landlords, Trial Court Opinion, 11/2/18, at 2, it appeared that Tenants' argument at trial was that the license "expired" on February 28, 2018. N.T., 3/19/18, at 21. Meanwhile, Steve Frempong argued that the license was both "revoked" due to the water judgment and Tenant's alleged failure to pay the water bill, *id.* at 10, 11, 23, and that the license "expired" and Landlords were unable to renew it. *Id.* at 21.

[5] Tenants provided the county docket numbers "February 2016, T0488" for the water bill case and "September 2017, T0565" for the real estate tax case. N.T., 3/19/18, at 18-19.

for the property. *Id.* at 20. The trial court deferred ruling. Finally, we note that at trial, Landlords again requested permission to enter the property for an appraisal, but the court denied Landlords' request. *Id.* at 25-27.

Three days later, on March 22, 2018, Landlords filed a second emergency motion, again seeking entry to the property to conduct an appraisal. On the same day, the court denied the motion without prejudice for Landlords to re-raise the issue after judgment.

On April 23, 2018, the trial court issued its decision; it awarded possession of the property to Landlords as of June 30, 2018 at 6:00 p.m., and directed that the escrow funds be released to Tenants.

Tenants filed a timely post-trial motion, arguing that pursuant to the Philadelphia Property Maintenance Code (Property Maintenance Code),[6] Landlords, because they failed to obtain a valid rental license, were precluded from receiving either possession of the property or rent. Landlords then filed a timely cross-post-trial motion, arguing they were entitled to immediate possession of the property and all unpaid rents and utilities usage. The court held a hearing on May 21, 2018, and on the following day, denied both post-trial motions.

Tenants timely appealed, and Landlords timely cross-appealed. The parties complied with the court's orders to file Pa.R.A.P. 1925(b) statements.

---

[6] The Property Maintenance Code appears under Title 4 of the Philadelphia Code.

- 6 -

Landlords raise the following issues for our review:

[1.] WHETHER THE COURT COMMITTED GROSS ERROR OF LAW AND / OR MANIFESTLY ABUSED ITS DISCRETION IN ENTERING AN ORDER DENYING PLAINTIFFS / APPELLANTS' REQUEST FOR MONEY JUDGMENT AND IMMEDIATE POSSESSION OF THEIR PROPERTY AFTER THE NON-PAYMENTS OF THE MONTH TO MONTH RENTS OF $1050 / MONTH FROM JULY 1, 2017 TO JUNE 30, 2018 AND THE NON-PAYMENTS OF CONTRACTUALLY MANDATED UTILITIES RENTS WHERE THE LEASE IS LEGALLY TERMINATED.

[2.] WHETHER TRIAL COURT COMMITTED GROSS ERROR OF LAW AND MANIFESTLY ABUSED ITS DISCRETION IN REPEATEDLY DENYING LANDLORDS' PROPERTY RIGHTS AND ACCESS TO SAID PROPERTY IN DENYING LANDLORDS' MOTION FOR SPECIAL INJUNCTION AND SUBSEQUENT EMERGENCY MOTION FOR LEAVE TO ENTER PROPERTY FOR INSPECTION AND APPRAISAL, FAILING TO MAKE APPROPRIATE AND TIMELY DECISION TO PROTECT LANDLORDS' PROPERTY AND PROPERTY RIGHTS IN CLEAR VIOLATION OF LANDLORDS' SUBSTANTIVE DUE PROCESS, FIRST AMENDMENT RIGHT OF EFFECTIVE ACCESS TO THE COURT AND LANDLORD PROPERTY RIGHTS UNDER ARTICLE I, SECTION I OF THE PENNSYLVANIA CONSTITUTION.

Landlords' Brief at 2-3.

In their first issue, Landlords present a myriad of claims under a general argument that the trial court's opinion included "half-truths," "outright falsehoods," and "erroneous misrepresentations." Landlords' Brief at 13. For ease of discussion, we address Landlords' claims *seriatim*.

We first note the relevant standard of review:

Our review in a non-jury case is limited to whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law. We must grant the court's findings of fact the same weight and effect as the verdict of a jury and, accordingly, may disturb the non-jury verdict only if the court's findings are unsupported by competent evidence or the court committed legal error that affected the outcome of the trial. It is not the role of an appellate court to pass

on the credibility of witnesses; hence we will not substitute our judgment for that of the factfinder. Thus, the test we apply is "not whether we would have reached the same result on the evidence presented, but rather, after due consideration of the evidence which the trial court found credible, whether the trial court could have reasonably reached its conclusion."

*Leb. County Hous. Auth. v. Landeck*, 967 A.2d 1009, 1012 (Pa. Super. 2009) (citation omitted). Furthermore:

"the factfinder is free to believe all, part, or none of the evidence, and the Superior Court will not disturb the trial court's credibility determinations." "Assessments of credibility and conflicts in evidence are for the trial court to resolve; this Court is not permitted to reexamine the weight and credibility determinations or substitute our judgments for those of the factfinder."

*Gutteridge v. J3 Energy Grp., Inc.*, 165 A.3d 908, 916 (Pa. Super. 2017) (citations omitted).

First, Landlords maintain that they obtained a certificate of rental suitability on February 20, 2017 and that, contrary to the court's finding, Tenants were given a copy of this certificate. Landlords' Brief at 13. However, this claim is not supported by Steve Frempong's own acknowledgment at trial that they did **not** have a certificate of rental suitability. **See** N.T., 3/19/18, at 10 (in response to the trial court's question, "[D]o you have a certificate of rental suitability[?]," Steve Frempong stated, "The answer is no, and the reason is that we are, our license [has] been revoked because of their failure to pay the water bill.").

Next, while Landlords do not explicitly refute the trial court's finding that they lacked a rental license, Landlords contend that: L & I mistakenly sent

their renewal form to an old address, Landlords thus contacted the City around June 20, 2017, and "the renewal document was finally completed on October 2, 2017." Landlords' Brief at 13-14. Landlords further deny that the license was ever revoked and instead claim that the license could not be renewed because of damage to the property caused by Tenants. *Id.* at 15-16.

Upon review, we find that these claims are waived because Landlords failed to raise them before the trial court. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). Landlords made no claim at trial of any "mis-addressed" or late receipt of license renewal forms. Also, Landlords alleged at trial that the cause of their inability to retain or renew a license was Tenants' failure to pay the water bill, N.T., 3/19/18, at 11, 21, and not the new claim presented on appeal — that Tenants damaged the property. *See* Pa.R.A.P. 302(a). Furthermore, even if either of Landlords' claims were true (that they could not renew their license because of Tenants' actions), they do not address why they did not have a valid license when the lease was executed in May of 2017. *See also* Trial Court Opinion, 11/2/18, at 12 ("[T]he plain language of the code required Landlord[s] to obtain a certificate prior to the inception of the lease. Therefore, it is impossible for Tenants to have prevented Landlord[s] from obtaining a certificate at that time[.]").

Next, Landlords claim that the evidence does not support the trial court's finding that Landlords were ineligible for a rental license because of unpaid

real estate taxes. In support, Landlords reason that the only evidence presented was an "unsubstantiated Docket Report," and that the mere filing of a complaint "is just [an] unproven allegation and" not competent evidence. Landlords' Brief at 22-23. Landlords' argument would improperly require this Court to impermissible reweigh the evidence and supplant the trial court's findings of fact with our own. *See Gutteridge*, 165 A.3d at 916; *Leb. County Hous. Auth.*, 967 A.2d at 1012. It is settled law that the trial court is free to believe all, part, or none of the evidence, and we may not disturb the court's findings of fact.

Next, Landlords deny that they are liable for any water bills, and instead, an unnamed "previous Tenant" is responsible for the water usage from July 2016 to May 2017, and Tenants must pay for the water usage after May 2017. Landlords' Brief at 18. This claim is also meritless. At trial, Steve Frempong presented "a hand-written summary [of the water bill] on looseleaf paper" as evidence of the water bill, repeatedly attesting that it was "the actual bill." N.T., 3/19/18, at 16-17. The trial court was free to credit or reject this evidence, as well as evidence that the City of Philadelphia filed suit in February of 2016 against Agnes Frempong for unpaid water bills. *See Gutteridge*, 165 A.3d at 916; *Leb. County Hous. Auth.*, 967 A.2d at 1012. We do not disturb the trial court's finding that Tenants are not liable for the water bill.

Finally, Landlords deny that, as the trial court found, they waived a claim for unpaid rent. *See* Trial Court Opinion, 11/2/18, at 7. In support, they

argue that both their complaint and post-trial motion requested unpaid rent. We agree with the trial court that the claim is waived. While Landlords' complaint did seek unpaid rent, they abandoned this claim at trial, as indicated in the following exchange:

> THE COURT: Are you seeking to collect rent?
>
> MR. FREMPONG: Your Honor, when we went to the — we just wanted the possession because they destroy[ed] the property.
>
> THE COURT: You are seeking possession?
>
> MR. FREMPONG: Yes.
>
> THE COURT: You are not seeking rent; you are just seeking possession?
>
> MR. FREMPONG: Your Honor, **we are not seeking rent**, but we would like to get the water bill. We are seeking the water bill because they haven't paid.

N.T., 3/19/18, at 12 (emphasis added). Subsequently, Steve Frempong confirmed this position: "[W]e are asking for termination, plus the payment of the water bill." *Id.* at 18.

In their second issue, Landlords aver that the trial court erred in denying their motions for special injunction and entry to the property for appraisal purposes. They allege: (1) the court's rulings caused them immediate and irreparable harm because they "are faced with foreclosure action and . . . need refinance [sic] of the property to avert foreclosure"; (2) denial of their motion caused greater injury than granting it would have because Landlords need an appraisal and inspection of the property in the face of foreclosure; and (3)

- 11 -

granting injunctive relief would "do no more than preserve the status quo . . . as it existed immediately prior to the filing of the Landlord Complaint." Landlords' Brief at 34-35.

The trial court found this issue to be moot because Landlords were awarded possession of the premises. Trial Court Opinion, 11/2/18, at 8. Landlords do not address, let alone dispute, this finding of mootness. **See Rivera v. Pa. Dep't of Corr.**, 837 A.2d 525, 527 (Pa. Super. 2003) ("An issue can become moot during the pendency of an appeal due to an intervening change in the facts of the case[.] An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect."). We thus hold that no relief is due. Moreover, Landlords' argument concerning the status quo is meritless. **See Ambrogi v. Reber**, 932 A.2d 969, 974 (Pa. Super. 2007) ("The purpose of a preliminary injunction is to prevent irreparable injury or gross injustice by preserving the status quo as it exists or as it previously existed before the acts complained of in the complaint."). Landlords do not explain what the "status quo" was; if they are arguing that the "status quo" was their having unfettered access into the property while it was leased by Tenants, Landlords have not cited any legal authority supporting such a claim.

We now turn to Tenants' sole issue on appeal, pertaining to statutory interpretation:

> Did the trial court commit an error of law when it interpreted Phila.
> Code § 9-3901(4)(e) to permit the court to cho[o]se between

possession and rent where a landlord violated the Code by failing to obtain both the required Rental License and Certificate of Rental Suitability, when such an interpretation would contravene other sections of the Code, produce absurd results, and undermine the intent and purpose of the Code sections?

Tenants' Brief at 3.

Tenants' issue concerns the trial court's interpretation of Section 9-3901(4)(e) of the Philadelphia Code:

> ***Non-compliance.*** Any owner who fails to obtain a rental license as required by § 9-3902, or to comply with § 9-3903 regarding a Certificate of Rental Suitability, or whose rental license has been suspended, **shall be denied the right to recover possession of the premises or to collect rent** during or for the period of noncompliance or during or for the period of license suspension. In any action for eviction or collection of rent, the owner shall attach a copy of the license.

Phila. Code § 9-3901(4)(e) (emphasis added).

Instantly, the trial court determined that the plain language permitted Landlords, despite their failure to obtain a valid rental license and certificate of rental suitability, to receive either possession of the property or unpaid rent, but not both. ***See*** Trial Court Opinion, 11/2/18, at 14.

On appeal, Tenants submit that the disjunctive word "or" in Section 9-3901(4)(e) should be read conjunctively as "and," and thus a landlord who fails to comply with Sections 9-3902 and 9-3903 should be barred from recovering both possession **and** rent. In support, Tenants allege that the trial court's interpretation contradicts another Philadelphia Code subsection, Section 9-3902(1)(a), which states in part: "No person shall collect rent with respect to any property that is required to be licensed pursuant to this Section

- 13 -

unless a valid rental license has been issued for the property."[7]  *See* Phila. Code § 9-3902(1)(a).  Tenants aver that the court's interpretation renders Section 9-3902(1)(a) meaningless and superfluous.  Finally, Tenants point out that Landlords were not without a remedy to regain possession of the property, as Landlords could have filed an action in ejectment under the Landlord Tenant Act.  Landlords' Brief at 16-17 n.7.

The *amici* brief joins Tenants' argument that the word "or" in Section 9-3901(4)(e) should be read as "and."  *Amici* argue that the Philadelphia City Council enacted the rental license and certificate of rental suitability requirements to ensure the payment of real estate taxes, the habitability and safety of rental properties, and the advisement to tenants of their rights to enforce the Property Maintenance Code.  *Amici* Brief at 6-7.  *Amici* summarize that L & I may not issue a rental license if there are outstanding code violations or unpaid real estate taxes.  *Amici* reason that if a noncompliant owner is denied rent but allowed re-possession, then the owner could simply evict the tenant and rent the property to a new, unsuspecting tenant.  Meanwhile, the City would not have collected delinquent real estate taxes or ensured that any

---

[7] Tenants also aver that the court's interpretation contravenes PM-102.6.4 of the Property Maintenance Code, which stated:  "No person shall collect rent with respect to any property that is required to be licensed pursuant to this code unless a valid license has been issued for said property."  *See* Phila. Property Maintenance Code PM-102.6.4, *repealed* Jan. 20, 2014, *effective* July 1, 2015.  This section, however, was repealed as of July 1, 2015, and thus we do not consider it.

code violations were corrected.

"We review [a] question of statutory interpretation *de novo*, and the scope of our review is plenary." ***In re Trust Under Deed of Kulig***, 175 A.3d 222 (Pa. 2017).

> The purpose of statutory interpretation is to ascertain the General Assembly's intent and to give it effect. 1 Pa.C.S. § 1921(a). In discerning that intent, courts first look to the language of the statute itself. If the language of the statute clearly and unambiguously sets forth the legislative intent, it is the duty of the court to apply that intent and not look beyond the statutory language to ascertain its meaning. **See** 1 Pa.C.S. § 1921(b) . . . . Courts may apply the rules of statutory construction only when the statutory language is not explicit or is ambiguous. 1 Pa.C.S. § 1921(c).

> \* \* \*

> We must read all sections of a statute "together and in conjunction with each other," construing them "with reference to the entire statute." 1 Pa.C.S. § 1922(2). When construing one section of a statute, courts must read that section not by itself, but with reference to, and in light of, the other sections.

> \* \* \*

> Parts of a statute that are in *pari materia*, *i.e.*, statutory sections that relate to the same persons or things or the same class of persons and things, are to be construed together, if possible, as one statute. 1 Pa.C.S. § 1932. If they can be made to stand together[,] effect should be given to both as far as possible. In ascertaining legislative intent, statutory language is to be interpreted in context, with every statutory section read together and in conjunction with the remaining statutory language, and construed with reference to the entire statute as a whole. We must presume that in drafting the statute, the General Assembly intended the entire statute, including all of its provisions, to be effective. 1 Pa.C.S. § 1922. Importantly, this presumption requires that statutory sections are not to be construed in such a way that one section operates to nullify, exclude or cancel another, unless the statute expressly says so.

***Id.*** at 229 (some citations omitted). "While the Statutory Construction Act is not expressly applicable to the construction of local ordinances, the principles contained therein are nevertheless useful." ***Phila. Eagles Football Club, Inc. v. City of Philadelphia***, 823 A.2d 108, 127 n.31 (Pa. 2003).

Our state appellate courts have consistently held that when "applying [the] normal rules of statutory construction, [the] presence of disjunctive word 'or' in [a] statute indicates that elements of statute are met when any particular element is satisfied, regardless of whether other elements are also met." ***See Wagner v. Wagner***, 887 A.2d 282, 286 (Pa. Super. 2005). ***See also Ben. Consumer Disc. Co. v. Vukman***, 77 A.3d 547, 555 (Pa. 2013).

As stated above, the trial court in this case found that "the plain language of [Subsection § 9-3901(4)(e)] denies a non-compliant owner **either** the right to possession **or** the right to collect rent." Trial Court Opinion, 11/2/18, at 14. It thus found that awarding possession of the property to Landlords, where unpaid rent was not awarded, was proper. After careful review, we disagree, and conclude that under Section 9-3901(4)(e), Landlords were prohibited from recovering rent **as well as** possession of the property.

As stated above, Section 9-3901(4)(e) reads:

> ***Non-compliance.*** Any owner who fails to obtain a rental license as required by § 9-3902, or to comply with § 9-3903 regarding a Certificate of Rental Suitability, or whose rental license has been suspended, **shall be denied the right to recover possession of the premises or to collect rent** during or for the period of noncompliance or during or for the period of license suspension. In any action for eviction or collection of rent, the owner shall

- 16 -

attach a copy of the license.

Phila. Code § 9-3901(4)(e) (emphasis added). We acknowledge that the word "or" generally connotes a disjunction.[8] However, we emphasize that the statue is written in the passive voice ("shall be denied") and in reading the entire context of the statute, we interpret Section 9-3901(4)(e) to mean that a noncompliant owner may not recover possession "or" collect rent, meaning he cannot receive either. In this manner, we agree with Tenants and *amici* that Section 9-3901(4)(e) does not allow recovery of rent or possession. Accordingly, we reverse the award of possession to Landlords. Upon remand, the trial court may direct the parties to file briefs and may hold any hearing it deems necessary to determine whether Tenants remain in the property, whether the property has been subject to sheriff's sale, and any other pertinent issue related to our reversal of the possession award.

Judgment affirmed in part and reversed in part. Case remanded with instructions. Jurisdiction relinquished.

_____

[8] ***See Ben. Consumer Disc. Co. v. Vukman***, 77 A.3d 547, 555 (Pa. 2013) ("[I]n a statutory construction analysis, . . . '[t]he word 'or' is defined as a conjunction 'used to connect words, phrases, or clauses representing alternatives.' . . . In other words, 'or' is disjunctive. It means one or the other of two or more alternatives."); ***Wagner v. Wagner***, 887 A.2d 282, 286 (Pa. Super. 2005) ("[When] applying [the] normal rules of statutory construction, [the] presence of disjunctive word 'or' in [a] statute indicates that elements of statute are met when any particular element is satisfied, regardless of whether other elements are also met.").

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/30/19