J-A16020-21

2021 PA Super 175

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GERMAR RUDOLF | : | |
| | : | |
| Appellant | : | No. 1016 MDA 2020 |

Appeal from the Judgment of Sentence Entered July 7, 2020
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0005045-2019

BEFORE:     KUNSELMAN, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

OPINION BY McCAFFERY, J.:                              Filed:  August 30, 2021

Germar Rudolf (Appellant) appeals from the judgment of sentence entered in the York County Court of Common Pleas following his jury convictions of indecent exposure and open lewdness.[1]  Appellant claims the evidence was insufficient to support a conviction of indecent exposure, and that the trial court abused its discretion in admitting evidence of his prior involvement with law enforcement.  We hold, *inter alia*, that the statutory definition of indecent exposure requires the actor to be either: (1) in any public place, regardless of whether others are present; **or** alternatively (2) "in any place" where there are persons present "under circumstances in which [the

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3127(a), 5901.

actor] knows or should know that [their] conduct is likely to offend, affront or alarm." *See* 18 Pa.C.S. § 3127(a). We affirm.

The Commonwealth presented the following evidence at trial. Lower Windsor Township Police Officer Benjamin Wind was on patrol in a marked police car on July 2, 2019, around 4:00 a.m. N.T., 7/6/20, at 56-57. He arrived at the area of Long Level Road and Fishing Creek in Lower Windsor, an area with a large parking lot, boat launch, park, and children's playground. *Id.* Officer Wind saw Appellant standing in the playground, wearing a bright yellow sleeveless shirt and no pants. *Id.* at 61, 63. He could see Appellant's genitalia. *Id.* at 62. Officer Wind did not see anyone other than Appellant. *Id.* at 74. He stopped his vehicle and began to move his spotlight toward Appellant. *Id.* at 61. Before the officer "actually got the spotlight on him," however, Appellant ran behind a tree. *Id.* at 61-63. Officer Wind "yell[ed] at" Appellant, stating at trial that it "took a while to get him to come over to me." *Id.* at 65. Appellant sat down at a picnic table and appeared to be putting on shorts. *Id.*

Appellant told Officer Wind he was there to work out, but Officer Wind did not observe any fitness equipment in the playground area. N.T. 6/7/20, at 65. The officer, however, noticed Appellant had a bottle of lotion or baby oil. *Id.* at 66. Officer Wind told Appellant to leave the area, but he witnessed Appellant about a half an hour later "just up the street," approximately 600

- 2 -

yards away. *Id.* at 66-67. Officer Wind again asked Appellant to leave the area.

Officer Wind charged Appellant with open lewdness and indecent exposure. The case proceeded to a jury trial commencing July 6, 2020. Officer Wind testified as summarized above.

Appellant testified in his defense to the following. He had driven to Long Level Road around 4:00 a.m. and prepared for a morning workout. N.T., 7/6/20, at 103. Appellant proceeded down to the playground and was about to change out of his dress shorts and into exercise shorts. *Id.* at 105. Appellant used the playground equipment to work out: "the monkey bars for pull-ups, . . . sit-ups, and leg raises, and that kind of stuff." *Id.* at 103-04. As he began to change his shorts, he noticed a light coming from a car about half a mile away. *Id.* Being in a "comprising situation," he hid behind a bush, "waiting for the car to pass." *Id.* at 105. However, the car did not leave and instead entered the parking lot. *Id.* at 105. Appellant "decided to quickly get back to the playground . . . and get into his workout shorts." *Id.* at 106. Appellant put his shorts on and turned to go to the river when a light struck him from the back. *Id.* at 108. At this point, he was wearing "pretty skimpy" running shorts. *Id.* at 110-11. As Appellant continued to walk down to the river, he heard Officer Wind call to him to "stop hiding naked behind the tree." *Id.* at 113.

Appellant approached Officer Wind, who asked why he was "running around naked." N.T., 7/6/20, at 114. Appellant replied that he was not naked, and Officer Wind asked for Appellant's identification. *Id.* at 114-15. Appellant returned to his vehicle to retrieve his identification. *Id.*

On direct examination, Appellant's counsel asked whether Appellant used the bottle of baby oil for his workout. N.T., 7/6/20, at 116. Appellant's uninterrupted response spanned four pages of testimony and went beyond the issue of the baby oil. *Id.* at 117-20. Appellant explained he used the baby oil to soothe his calluses after a workout, and testified about his ensuing exchange with Officer Wind as follows. Officer Wind recognized Appellant's German accent and asked if he was "the guy we had a case with several years ago[.]" *Id.* at 118. Appellant replied that he was, but "that was [a] completely different case." *Id.* Officer Wind then told Appellant he would charge him with open lewdness and illegal trespassing. *Id.* Appellant also claimed that Officer Wind said, "Judge Fishel will not be happy to see you again. Wasn't there an order out you're not allowed to be here?" *Id.* Appellant replied that he was not aware of such an order. *Id.* Officer Wind instructed Appellant to leave the area and to not come back. *Id.* at 119.

Following Appellant's direct examination, the Commonwealth argued at sidebar that in testifying about this prior incident, Appellant "opened the door" for the Commonwealth to cross-examine him about it and to call Officer Wind

to testify about the exchange as well.[2]  N.T., 7/6/20, at 20-121.  When the trial court asked defense counsel for any opposing argument, he responded as follows:

> [Appellant's counsel]:  . . . I told him not to say anything about this.  I knew what would happen.
>
> THE COURT: Okay.  So you're conceding that's the law.
>
> [Appellant's counsel:] I don't know what to say, Your Honor.
>
> THE COURT:  Yeah, I think he opened the door[.]

*Id.* at 122-23.   The court agreed Appellant opened the door and thus permitted the cross-examination of Appellant and further testimony by Officer Wind.  *Id.* at 123.

On cross-examination, Appellant stated that in 2014, he worked out in the same area, then went for a swim in the river naked.  N.T., 7/6/20 at 126. When he "came back," however, his bicycle and clothes had "disappeared." *Id.*  "[A]s he approached the site, two police officers" appeared and directed him to come out of the river.  *Id.*  Appellant did not want to, and asked them to "get [his] pants from his bicycle and throw it in the river so" he could put them on.  *Id.*

---

[2] At sidebar, Commonwealth and defense counsel explained Appellant's prior incident resulted in a summary offense charge of disorderly conduct.  N.T., 7/6/20, at 122.  However, in Appellant's ensuing cross-examination, he merely testified about the underlying acts, and did not mention any formal charges.

The Commonwealth recalled Officer Wind as a witness in rebuttal, and he testified he remembered this exchange with Appellant on July 2, 2019, about the prior incident. N.T., 7/6/20, at 128. Officer Wind further testified he was aware of the previous incident involving indecent exposure, and that in preparing the charges for this case, he spoke with the officer who filed charges in the prior incident and read the report. *Id.* at 129.

Finally, we note Appellant also called George Morrison, a private detective, as a witness. N.T., 7/6/20, at 87. Morrison photographed the various views of the playground area around 4:00 in the morning, testifying that it was incredibly dark and difficult to capture anything on film. *Id.* at 89-99.

On July 7, 2020, the jury returned a verdict of guilty for both charges of open lewdness and indecent exposure. The case proceeded immediately to sentencing, and the trial court imposed 12 months' probation for the charge of open lewdness and a concurrent term of 24 months' probation for indecent exposure. N.T., 7/7/20, at 177. Appellant did not file any post-sentence motions.

On July 20, 2020, Appellant's trial counsel filed a motion to withdraw. On August 7th, the trial court granted leave to withdraw.

Meanwhile, on August 4, 2020, Appellant filed a *pro se* notice of appeal. On August 7th, the trial court directed Appellant to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. On August 12th, current

counsel, Daniel Bush, Esquire, entered his appearance as Appellant's counsel of record. The following day, Appellant filed a motion for an extension of time to file a Rule 1925(b) statement, which was granted. Appellant then filed a timely Rule 1925(b) statement.

On appeal, Appellant raises the following issues for our review:

A. Whether the evidence was sufficient to support the conviction for indecent exposure, where the evidence presented by the Commonwealth did not establish any act done by Appellant under circumstances in which another person was likely to be offended or alarmed, and where the only person who observed Appellant was the citing police officer?

B. Whether the trial court abused its discretion by allowing the Commonwealth to present evidence regarding Appellant's prior involvement with law enforcement in a prior circumstance, after the trial court erroneously determined the Appellant had "opened the door" to allowing such cross-examination?

Appellant's Brief at 5.

In his first issue, Appellant claims the evidence was insufficient to support a conviction of indecent exposure. We first set forth the Pennsylvania Crimes Code statutory definition of indecent exposure:

A person commits indecent exposure if that person exposes his or her genitals in any public place or in any place where there are present other persons under circumstances in which he or she knows or should know that this conduct is likely to offend, affront or alarm.

18 Pa.C.S. § 3127(a).

On appeal, Appellant now claims that the Commonwealth could not meet its burden of proof because it did not establish that other persons were present or that he knew or should have known his conduct was "likely to offend, affront

- 7 -

or alarm." Appellant's Brief at 16, *quoting* 18 Pa.C.S § 3127(a). Appellant maintains that the area where he was changing was "incredibly dark" with "very little ambient light." Appellant's Brief at 16. Appellant further avers the only person who observed him was Officer Wind. *Id.* Appellant thus argues that "[a] reasonable person," changing their clothes at 4:00 a.m. in a dark area where no other persons were present, would have "no reason to believe that such conduct would be likely to offend, affront, or alarm anyone." *Id.* at 17. No relief is due.

> Our standard for a review of the sufficiency of evidence is well-settled:
>
> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Antidormi*, 84 A.3d 736, 756 (Pa. Super. 2014) (citation omitted).

We further consider the following principles underlying statutory interpretation:

> The purpose of statutory interpretation is to ascertain the General Assembly's intent and to give it effect. 1 Pa.C.S. § 1921(a). In discerning that intent, courts first look to the language of the statute itself. If the language of the statute clearly and unambiguously sets forth the legislative intent, it is the duty of the court to apply that intent and not look beyond the statutory language to ascertain its meaning. **See** 1 Pa.C.S. § 1921(b) . . . . Courts may apply the rules of statutory construction only when the statutory language is not explicit or is ambiguous. 1 Pa.C.S. § 1921(c).

**Frempong v. Richardson**, 209 A.3d 1001, 1009 (Pa. Super. 2019). "Our state appellate courts have consistently held that when 'applying [the] normal rules of statutory construction, [the] presence of disjunctive word 'or' in [a] statute indicates that elements of statute are met when any particular element is satisfied, regardless of whether other elements are also met.'" **Id.** at 1010 (citation omitted).

As stated above, indecent exposure is defined in our Crimes Code as follows:

> A person commits indecent exposure if that person exposes his or her genitals in any public place **or** in any place where there are present other persons under circumstances in which he or she knows or should know that this conduct is likely to offend, affront or alarm.

18 Pa.C.S. § 3127(a) (emphasis added).

We interpret the plain meaning of the statute, including the disjunctive term "or," to require the act to occur: (1) "in any public place" — regardless of whether other persons are present; **or** (2) "in any place where there are

- 9 -

[others] present . . . under circumstances in which [the actor] knows or should know that this conduct is likely to offend, affront or alarm." **See** 18 Pa.C.S. § 3127(a); **Frempong**, 209 A.3d at 1009. In other words, once the Commonwealth has shown the act was committed in a public place, then it is not further required to show: (1) there were other persons present; or (2) that the actor actor knew or should have known their conduct was likely to offend, affront, or alarm. **See id.**

Here, it was not disputed that Appellant was in a public playground, which was next to or near a large parking lot, boat launch, and park. **See** N.T., 7/6/20, at 56-57. Having satisfied the element of a "public place," the Commonwealth was not further required to show, as Appellant argues on appeal, that he knew or should have known his conduct was likely to offend, affront, or alarm.[3] **See** Appellant's Brief at 15. For the foregoing reasons, we do not disturb Appellant's conviction of indecent exposure.

---

[3] On appeal, Appellant advances this interpretation of the indecent exposure statute — that an actor must expose their genitals:

> (1) "in any public place . . . under circumstances in which he or she knows or should know that this conduct is likely to offend, affront or alarm"; or (2) "in any place where there are present other persons under circumstances in which he or she knows or should know that this conduct is likely to offend, affront or alarm."

Appellant's Brief at 15. In other words, Appellant would attach the phrase, "under circumstances in which he or she knows or should know that this conduct is likely to offend, affront or alarm," to both the element of "any public place" and "any place where there are present other persons."

Furthermore, even if Appellant were to challenge the sufficiency of evidence under the second prong — that the conduct was committed "in any place where there are present other persons under circumstances in which he or she knows or should know that this conduct is likely to offend, affront or alarm" — no relief would be due. **See** 18 Pa.C.S. § 3127(a). Appellant acknowledges that another person was present — "the citing police officer," Officer Wind. Appellant's Brief at 15. Appellant cites no authority, nor even presents any explanation, why Officer Wind cannot be a "person[ ]" present under the indecent exposure statute. **See id.** Instead, we note, "it is sufficient for the Commonwealth to show that Appellant knew or should have known that his conduct is likely to cause affront or alarm." **Commonwealth v. Tiffany**, 926 A.2d 503, 511 (Pa. Super. 2007).

Here, the trial court cited Appellant's own testimony "that he ran when Officer Wind approached because he did not 'like being exposed in that intense light,'" as well as Officer Wind's testimony that Appellant began to run even before Officer Wind put the spotlight on him. Trial Ct. Op., 10/13/20, at 8. The court also considered the fact that Appellant "stood next to a public children's playground with [a] clear unobstructed view from the road," and concluded "there was ample evidence for the jury to conclude [Appellant] knew or should have known that his conduct was likely to cause affront or alarm." **Id.** at 10. We agree, after viewing all the evidence in the light most favorable to the Commonwealth, that the evidence supports a finding that

Appellant knew or should have known his actions would likely cause affront or alarm. *See* 18 Pa.C.S. § 3127(a); *Tiffany*, 926 A.2d at 511.

In his second issue, Appellant claims that the trial court abused its discretion in allowing the Commonwealth to present evidence of his prior involvement with law enforcement. Appellant challenges the trial court's finding that he had "opened the door." Appellant's Brief at 21. Appellant maintains he "created no false impression that needed to be refuted," insisting he "merely recounted" Officer Wind's questions and his own "truthful and accurate" answers to these questions. *Id.* Furthermore, Appellant avers the trial court abused its discretion in allowing the rebuttal testimony from Officer Wind, as it "merely act[ed] as proof of bad character" and thus resulted in "actual and severe prejudice." *Id.* at 24. Appellant concludes the Commonwealth "did not demonstrate that the prior bad acts evidence served a non-character purpose," the prior act "had nothing to do with [his] conduct on July 2, 2019," and the "prejudicial effect far outweighed its probative value." *Id.*

We note the Commonwealth argues that Appellant conceded this evidentiary claim at trial, and as a result, the claim is waived. Commonwealth's Brief at 16. The Commonwealth notes that defense counsel did not object to its request to recall Officer Wind to testify, and in fact conceded that Appellant had opened the door. *Id.* at 16-17, *citing* N.T., 7/6/20, at 122-23 ("That's why I told him not to say anything about this. I

- 12 -

knew what would happen."). In a reply brief, Appellant denies he conceded the evidentiary challenge, and argues both he and the Commonwealth "jointly requested to approach for a sidebar." Appellant's Reply Brief at 7. However, we note the notes of testimony indicate the Commonwealth alone requested a sidebar. *See* N.T., 7/6/20, at 120 (Commonwealth stating, "Your Honor, I'm not sure how you want to do this. But may we approach?").

It is settled that an appellant's failure to raise a contemporaneous objection to evidence at trial waives that claim on appeal. ***Commonwealth. v. Ramos***, 231 A.3d 955, 957 (Pa. Super. 2020). Our review of the trial notes of testimony supports the Commonwealth's suggestion that Appellant has waived this issue. Appellant volunteered the information about the prior incident during his own direct examination, and defense counsel did not redirect or terminate Appellant's narrative testimony. ***See*** N.T., 7/6/20, at 118. When asked for any argument against the Commonwealth's contention that Appellant opened the door, defense counsel instead appeared to agree: "That's why I told him not to say anything about this. I knew what would happen." ***Id.*** at 122-23. Furthermore, when asked specifically whether he conceded the Commonwealth's evidentiary argument, counsel replied, "I don't know what to say, Your Honor." ***Id.*** at 123. While we agree with Appellant this was a "non-committal response," which indicated "that Defense Counsel believed he was in a difficult position," ***see*** Appellant's Reply Brief at 8, when reviewed in the context of all the foregoing, we conclude Appellant did not

affirmatively object to the Commonwealth's argument nor, importantly, present any legal discussion why the evidence should be precluded. **See** N.T., 7/6/20, at 122-23. Accordingly, we agree with the Commonwealth this evidentiary issue is waived for appeal. **See Ramos**, 231 A.3d at 957.

As we conclude no relief is due, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/30/2021