J-A24003-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| TD BANK, N.A. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| SKIP J. MASSENGILL AND JOANN MASSENGILL | : | |
| | : | No. 3047 EDA 2023 |
| APPEAL OF: SKIP J. MASSENGILL | : | |

Appeal from the Judgment Entered November 2, 2023
In the Court of Common Pleas of Montgomery County Civil Division at
No(s): 2013-28311

BEFORE: LAZARUS, P.J., KING, J., and LANE, J.

MEMORANDUM BY LAZARUS, P.J.:          **FILED MAY 7, 2025**

Skip J. Massengill appeals from the judgment, entered in the Court of Common Pleas of Montgomery County, following a nonjury trial resulting in a verdict in favor of Appellee TD Bank, N.A., in this foreclosure matter. After our careful review, we affirm in part, vacate in part, and remand the case to the trial court for the entry of an amended judgment consistent with the dictates of this memorandum.

The trial court set forth the facts of this matter as follows:

To prove its claim for mortgage foreclosure, TD Bank, N.A. ("TD") presented the testimony of its employee, Jordan Purington. We find Mr. Purington's testimony to be credible.

In 2008, Commerce Bank, N.A. ("Commerce") merged into TD. Mr. Purington's title with TD is controls group manager. In this role, Mr. Purington does business processes and "some other activity for the U.S. customer assistance business, which is collections and recovery." He supports both [] servicing and

collections of [TD's] mortgages. Mr. Purington has knowledge of TD's practices in servicing mortgages. Mr. Purington was familiar with TD's business records kept in its business log of servicing mortgages, and he was familiar with the Borrowers' Note and mortgage at issue in this case.

On May 12, 2004, [Massengill] and Joann Flynn Massengill ("Borrowers") executed the following: (1) a fixed/adjustable rate note ("Note") in which, in return for a loan they received from Commerce, they agreed to pay $1.4 million, plus interest, to Commerce; and (2) a mortgage on the property located at 400 Glyn Wynne Road (AKA 126 Grays Ln), Haverford, PA 19041 ("Property").

As stated in the preceding paragraph, the Note was a fixed/adjustable rate note that provided, in relevant part, that Borrowers would pay a yearly interest rate of 4.500%, which "may change in accordance with Section 4 of this Note." Paragraph 4 of the Note informed Borrowers that the initial fixed interest rate "**will change** to an adjustable interest rate on the first day of June[] 2009, and the adjustable interest rate [Borrowers] will pay may change on that day and every 12 months thereafter." (emphasis added).

Borrowers made payments on the Note through September 1, 2011. Payments due on the Note for October 1, 2011 and thereafter remained outstanding at the time of trial. The last payment was applied on January 31, 2012. On November 16, 2012, TD sent Act 91 Notice ("Notice") to Borrowers, which notified Borrowers they were in default on the mortgage. The Notice informed Borrowers that the amount past due was $125,782.89, and they could cure the default within 30 days of the date of the Notice by paying that amount, as well as any mortgage payments and late charges which become due during the 30-day period.

Since Borrowers defaulted on the loan, TD has made homeowner's insurance and tax payments on the Property. TD introduced records showing a breakdown of fees it has paid consisting of property inspection fees, appraisal fees, and legal fees.

On March 8, 2013, while Borrowers were in default of the loan on the Property but before TD had filed the instant mortgage foreclosure action on September 16, 2013, [Massengill] and TD entered into a Settlement and General Release ("Settlement and Release") that related to [Massengill's] claims against TD that he

- 2 -

had brought before FINRA (Financial Industry Regulatory Authority) concerning his employment with Commerce/TD. Prior to entering into this Settlement and Release with TD, [Massengill] had received the Act 91 Notice notifying Borrowers that they were in default of their loan with Commerce/TD that TD had sent on November 16, 2012. Pursuant to the Settlement and Release, TD issued payments in the total amount of $3,196,770.11 to [Massengill]. The Settlement and Release contains an integration clause at § 23, which states:

23. Entire Agreement. This Agreement is the entire agreement between the parties **with respect to [Skip] Massengill's employment with TD Bank and TDWMSI [TD Wealth Management Services, Inc.] and the termination of that employment** and supersedes and replaces any and all prior and contemporaneous agreements, representations, promises or understandings of any kind between the parties. No modification, amendment or waiver of any of the provisions of this Agreement shall be effective unless in writing and signed by both parties.

(emphasis added).

On November 7, 2022, TD sent [Massengill] a letter stating the loan payoff amount, $2,205,099.59[, which] comprised the following: $1,194,802.26 (principal); $462,376.31 (interest); $41,716.17 (late charges); $487,481.14 (escrow); and $18,732.71 (fees & expenses). The daily interest rate is a systemically-created figure; it is a point-in-time figure projection. Per the terms of the Note, the interest rate changed from fixed to adjustable. Accordingly, the daily interest rate has changed during the course of the loan. The figure $487,481.14 represents escrow payments made by TD.

The court conducted a bench trial on January 24, 2023. At the conclusion of trial, the court requested the parties to submit post-trial briefs. On February 16, 2023, following its review of the briefs submitted, the court issued its decision in which it found in favor of TD and against Borrowers, in rem, in the amount of $2,205,099.59, together with continuing interest at the rate of $147.3044 per day from the date of the decision on the unpaid balance, together with continuing costs and attorney's fees, and for the sale of the Property.

On February 24, 2023, [Massengill] filed a [post-trial motion]. On February 27, 2023, the court issued an order directing TD to file an answer and memorandum of law in response to [Massengill's] post-trial motion. On March 7, 2023, TD filed its answer and memorandum of law.

On March 14, 2023, while [Massengill's] post-trial motion remained pending, [Massengill] filed a notice of appeal from the court's decision entered on February 16, 2023. By order filed on June 8, 2023, the Superior Court quashed said appeal as premature[,] as no disposition had been issued regarding [Massengill's] post-trial motion. The Superior Court also noted that judgment had not been entered on the trial court docket. By order entered on June 21, 2023, this court denied [Massengill's] post-trial motion.

On July 20, 2023, [Massengill] filed a notice of appeal regarding the court's denial of his post-trial motion. On September 12, 2023, this court filed its opinion pursuant to Pa.R.A.P. 1925(a) in which it stated that: (1) judgment had not been entered in the case; and (2) an appeal from the denial of a post-trial motion is interlocutory and not a final appealable order. On October 2, 2023, [Massengill] withdrew that appeal in the Superior Court.

On November 2, 2023, pursuant to a praecipe to enter final judgment on court order filed by TD, the Montgomery County Prothonotary entered judgment on the court's decision. On November 7, 2023, [Massengill] filed the instant appeal from the final in rem judgment. On November 13, 2023, [Massengill] filed an amended notice of appeal to note his appeal concerned the order denying his post-trial motion as well as the subsequently[ ]entered in rem judgment.

Trial Court Opinion, 1/17/24, at 1-6 (footnotes, brackets, unnecessary capitalization, and headings omitted).

Both Massengill and the trial court have complied with Pa.R.A.P. 1925.

Massengill raises the following claims for our review:

1. Whether the trial court erred in entering in rem judgment in foreclosure where[,] after issuing its [Act] 91 Notice of Default, [TD] held cash funds that established [Massengill's] valid tender

- 4 -

of payment in excess of amounts to cure arrears on the mortgage and reinstate loan to pre-default status?

2.   Whether [the] trial court lacked jurisdiction in foreclosure matter where [TD] failed to issue a new Act 91 notice after rejecting [Massengill's] tender of payment resulting in discharge of cure amount and returning loan to pre-default status?[1]

3.   Whether [the] trial court erred in its speculation of a sum certain due under [the] loan where the amount claimed by [TD] was not supported by consistent and sufficient evidence?

4.   Whether [the] trial court erred in ordering post-judgment continuous costs, legal fees[,] and interest rate, not authorized by the mortgage and note which merged with the in rem judgment?

Brief of Appellant, at 4 (unnecessary capitalization omitted).

We begin by noting that Massengill's brief fails to comply with our Rules of Appellate Procedure. Specifically, Pa.R.A.P. 2116(a) provides that the statement of questions involved must state concisely the issues to be resolved and that "[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby." Pa.R.A.P. 2116(a). Rule 2119(a) requires that "[t]he argument shall be divided into as many parts as there are questions to be argued[.]" Pa.R.A.P. 2119(a). Here, in his statement of questions involved, Massengill purports to raise four questions for our review. However, his argument section is divided into nine sections, only two of which directly correspond to issues raised in the statement of

_____

[1] We may summarily dispose of this claim by noting that, in **_Beneficial Consumer Discount Co. v. Vukman_**, 77 A.3d 547 (Pa. 2013), our Supreme Court held that a lender's provision of a defective Act 91 notice does not deprive the courts of subject matter jurisdiction. **_See id._** at 553 ("assertion that Act 91 imposes jurisdictional prerequisites on mortgage foreclosure actions is unsupportable"). Moreover, in light of our conclusion *infra* that Massengill did not tender payment to TD, no new Act 91 notice was required.

questions involved. It is within this Court's power to quash an appeal for clear violations of the Rules of Appellate Procedure. *See Universal Underwriters Ins. Co. v. A. Richard Kacin, Inc.*, 916 A.2d 686, 689 n.6 (Pa. Super. 2007). However, because Massengill's brief is not so defective as to preclude effective appellate review of his preserved claims, we decline to quash his appeal and will review those claims raised in his statement of questions presented. Nevertheless, we remind counsel that the Rules of Appellate Procedure "are not guideposts but a mandate" and that full compliance is expected. *McGee v. Muldowney*, 750 A.2d 912, 913 n.1 (Pa. Super. 2000).

The following principles govern our review of an appeal following a bench trial:

> Our standard of review in non-jury trials is to assess whether the findings of facts by the trial court are supported by the record and whether the trial court erred in applying the law. Upon appellate review, the appellate court must consider the evidence in the light most favorable to the verdict winner and reverse the trial court only where the findings are not supported by the evidence of record or are based on an error of law. Our scope of review regarding questions of law is plenary.

*Stoley v. Wampler*, 317 A.3d 1007, 1015 (Pa. Super. 2024), quoting *Riverview Carpet & Flooring, Inc. v. Presbyterian SeniorCare*, 299 A.3d 937, 956 (Pa. Super. 2023).

Massengill first claims that the trial court erred in entering in rem judgment in foreclosure where, after issuing its Act 91 notice[2] of default, TD held cash funds that established Massengill's valid tender of payment in excess of the amount necessary to cure the arrears on the mortgage and pay off the loan in full.  Essentially, Massengill argues that, after the Settlement and Release regarding his employment claim was executed, but prior to TD's disbursement of the settlement funds to Massengill and his counsel, the settlement funds held by TD should have been considered a "tender" under the Pennsylvania Commercial Code and TD should have used those funds to satisfy Massengill's mortgage arrears.  Because TD did not do so and instead

_____

[2] Prior to commencing a foreclosure action, a lender is required to provide the mortgagor with notice pursuant to Act 91, the Homeowner's Emergency Assistance Act.  *See* 35 P.S. §§ 1680.401c-1680.412c.

> This notice shall be in plain language and specifically state that the recipient of the notice may qualify for financial assistance under the Homeowner's Emergency Mortgage Assistance Program.  This notice shall contain the telephone number and the address of a local consumer credit counseling agency. . . . This notice shall also advise the mortgagor of his delinquency or other default under the mortgage, including an itemized breakdown of the total amount past due, and that such mortgagor has thirty (30) days, plus three (3) days for mailing, to have a face-to-face meeting with a consumer credit counseling agency to attempt to resolve the delinquency or default by restructuring the loan payment schedule or otherwise.

35 P.S. § 1680.403c (Notice requirements).  "If, after receiving [Act 91] notice, the homeowner cures the delinquency or default . . . and the homeowner subsequently becomes more than 60 days delinquent, the mortgagee shall again provide [Act 91] notice before taking legal action."  12 Pa.Code § 31.203(b)(10).

paid the funds to Massengill and his counsel, his tender should be deemed refused and his mortgage deemed satisfied. He is entitled to no relief.

A promissory note securing a mortgage is a negotiable instrument governed by Pennsylvania's version of the Uniform Commercial Code ("PUCC").[3] **See JP Morgan Chase Bank, N.A. v. Murray**, 63 A.3d 1258, 1265 (Pa. Super. 2013). Section 3-603 of the PUCC, "Tender of Payment," provides, in relevant part, as follows:

> (b) Effect of refusal of tender of payment.--If tender of payment of an obligation to pay an instrument is made to a person entitled to enforce the instrument and the tender is refused, there is discharge, to the extent of the amount of the tender, of the obligation of an indorser or accommodation party having a right of recourse with respect to the obligation to which the tender relates.
>
> (c) Obligation to pay interest discharged.--If tender of payment of an amount due on an instrument is made to a person entitled to enforce the instrument, the obligation of the obligor to pay interest after the due date on the amount tendered is discharged.
> . . .

13 Pa.C.S.A. § 3603(b)-(c).

The word "tender" is not defined in the PUCC and we can uncover no case law providing a definition. However, Black's Law Dictionary defines "tender" as "an **unconditional offer** of money or performance to satisfy a debt or obligation[.]" Black's Law Dictionary (12th ed. 2024), tender (emphasis added). **See also** 86 CJS Tender § 1 ("A tender is an **unconditional offer** by a debtor to pay a sum of money not less than the

_____

[3] 13 Pa.C.S.A. §§ 1101-91136.

amount due under an obligation.") (emphasis added).  Thus, a "tender" clearly requires an affirmative "offer" on the part of the debtor.  Here, there was no evidence presented at trial that Massengill ever made an offer to TD to apply any portion of his settlement proceeds to his mortgage arrears.  Accordingly, TD's failure to apply those proceeds to Massengill's arrears does not amount to a refusal of tender that would require discharge of Massengill's mortgage obligations under section 3-603 of the PUCC.[4]

Next, Massengill claims that trial court erred by speculating as to the sum certain due under the loan where the amount claimed by TD was not supported by consistent and sufficient evidence.  He is entitled to no relief.

_____

[4] As both the trial court and TD aptly note, had TD unilaterally applied a portion of Massengill's settlement funds to satisfy his mortgage arrears, it could have been subject to potential claims by Massengill for conversion or breach of contract.  In any event, Massengill could have chosen to satisfy his mortgage arrears upon receipt of his settlement payment.  For whatever reason, he opted not to do so.

Moreover, to the extent that Massengill attempts to argue that the settlement agreement in his employment action resolved all claims between the parties, including TD's claims on Massengill's mortgage, he is entitled to no relief. First, Massengill did not raise the claim in his statement of questions presented, nor is it fairly suggested thereby.  *See* Pa.R.A.P. 2116(a). Accordingly, the claim is waived.  *Id.*  Second, even if the claim were not waived, the settlement agreement between TD and Massengill clearly states that it pertains only to claims, or potential claims, that Massengill had, has, or may have **against TD**.  *See* Settlement Agreement and General Release, 3/8/13, at 1 (parties agreeing to compromise all claims of any kind that Massengill had, has, or may have against TD); *id.* at 6 (Massengill releasing TD from any and all claims).  Accordingly, TD's mortgage-related claims **against Massengill** were not released in the employment settlement.

At trial, TD presented the testimony of Jordan Purington, a controls group manager in the U.S. Customer Assistance Business, responsible for collections and recovery. *See* N.T. Nonjury Trial, 1/24/23, at 24. Purington testified that he is familiar with TD's business records, as well as with Massengill's account. *Id.* at 24-25. Purington testified that Massengill's adjustable-rate mortgage was for $1.4 million with an initial interest rate of 4.5%. *Id.* at 32-33. Purington further testified that, in the event of default, TD is entitled to collect late fees, inspection fees, and attorneys' fees, in addition to principal and interest. *Id.* at 33-34. Purington testified that Act 91 notice dated November 16, 2012, was sent to Massengill. *Id.* at 36; Plaintiff's Exhibit P-3. Purington authenticated the Massengill mortgage's transactional history, which showed that "the loan was paid through September 1st of 2011, is currently outstanding for October 1st of 2011, and the last payment was applied on January 31st of 2012." *Id.* at 38. Purington testified that, according to a payoff letter dated November 7, 2022, Massengill's account showed a principal balance due of $1,194,802.26, interest owed in the amount of $462,376.31, late charges in the amount of $41,716.17, a negative escrow balance of $487,481.14,[5] and outstanding fees totaling $18,723.71.[6] *Id.* at 41; Plaintiff's Exhibit P-7. Purington testified

_____

[5] Purington testified that the escrow deficiency consisted of payments made by TD for taxes and insurance between 2012 and 2022. *Id.* at 42; Plaintiff's Exhibit P-9.

[6] Purington testified that the fees included inspection, appraisal, and legal fees. *Id.* at 46; Plaintiff's Exhibit P-10.

- 10 -

that the documentation supporting the above account delinquencies were taken from TD records kept in the normal course of business. *Id.* at 49. Judgment was entered in the amount of $2,205,099.59, the total of the above amounts.

The trial court credited Purington's testimony, concluding that it "demonstrated the current, precise balance of [Massengill's] loan. [Massengill's] claims to the contrary are disingenuous legal gymnastics." Trial Court Opinion, 1/17/24, at 15. Based on our review, it is clear that the trial court's judgment was not based on speculation, but rather on the testimony and evidence presented at trial. Accordingly, Massengill is entitled to no relief.

Finally, Massengill claims that the trial court erred in ordering post-judgment continuing costs, legal fees, and interest at a rate not authorized by the mortgage and note. Massengill argues that "the terms of a mortgage are merged into a foreclosure judgment and thereafter no longer provide the basis for determining the obligations of the parties." Brief of Appellant, at 62, quoting ***Stendardo v. Fed. Nat'l Mortgage Assoc.***, 991 F.2d 1089, 1095 (3d Cir. 1993). Massengill asserts that "post-judgment expenses [may] only be recovered [if] they were specifically set forth in the mortgage document." Brief of Appellant, at 64. Massengill argues that, here, the mortgage does not provide for post-judgment fees and costs and only authorizes post-judgment interest at a rate of 3%. *Id.* at 66. Thus, Massengill argues, the court's order directing payment of post-judgment fees, costs, and per diem interest at a rate of 4.5% was in error.

Under controlling Pennsylvania law, [i]t is elementary that judgment settles everything involved in the right to recover, not only all matters that were raised, but those which might have been raised. The cause of action is merged in the judgment which then evidences a new obligation. The doctrine of merger of judgments thus provides that the terms of a mortgage are merged into a foreclosure judgment and thereafter no longer provide the basis for determining the obligations of the parties.

. . .

There is an exception to this doctrine. Parties to a mortgage may rely upon a particular provision post-judgment if the mortgage clearly evidences their intent to preserve the effectiveness of that provision post-judgment. The applicability of this exception will determine whether the instant [m]ortgage clause requiring the [appellants] to pay the expenses at issue survived the [j]udgment.

*EMC Mortgage, LLC v. Biddle*, 114 A.3d 1057, 1065–66 (Pa. Super. 2015),

quoting *Stendardo*, 991 F.2d at 1094–95 (other citations omitted).

Here, the relevant provisions of the Massengill mortgage document

provide as follows:

22. Acceleration; Remedies. . . . If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. **[TD] shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by [a]pplicable [l]aw**.

Mortgage, 5/12/04, at ¶ 22 (emphasis added).

27. Interest Rate After Judgment. [Massengill] agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be **the rate payable from time to time under the [n]ote**.

- 12 -

*Id.* at ¶ 27 (emphasis added).

In ***Biddle***, ***supra***, this Court interpreted language identical to that contained in the highlighted portion of paragraph 22 of the Massengill mortgage and concluded that it:

> clearly and unambiguously states that [the lender] is entitled to collect all expenses incurred in pursuing the remedies [of a foreclosure action], including, but not limited to, attorneys' fees and costs of title evidence. We read this provision to mean that recoverable expenses include those that are necessary to the pursuit of the foreclosure action. The types of recoverable expenses that are expressly identified in paragraph 18 support this interpretation, i.e. attorneys' fees and costs of title evidence. Thus, it was not error for the trial court to grant attorneys' fees and costs of title[,] as those expenses survived the judgment under the plain terms of the parties' security agreement.

***Biddle***, 114 A.3d at 1068 (internal quotations omitted). Thus, here, it is clear that Massengill's obligations under paragraph 22 survived the entry of judgment and the trial court did not err in imposing post-judgment costs and attorney's fees.

Similarly, the ***Biddle*** Court concluded that language identical to that contained in paragraph 27 of the Massengill mortgage, providing for post-judgment interest at the rate payable from time to time under the note, survived the entry of judgment. ***See id.*** at 1071. Thus, TD is entitled to post-judgment interest. However, we agree with Massengill that there is no evidentiary basis for the trial court's imposition of interest in the amount of $147.3044 per day, i.e. 4.5%. The note securing Massengill's mortgage was an adjustable-rate note, with an **initial** rate of 4.5%. At trial, the only

- 13 -

evidence presented regarding the current interest rate was the November 7, 2022 payoff letter, which indicated a current rate of 3%. *See* Plaintiff's Exhibit P-6. Accordingly, we are constrained to conclude that the trial court erred in imposing per diem post-judgment interest in the amount of $147.3044. Upon remand, the trial court shall enter an amended judgment imposing post-judgment interest at a rate of 3%.

Judgment affirmed in part and vacated in part. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/7/2025

- 14 -